TAYLOR, Judge.
 

 On August 16, 1972, plaintiff and defendant Hoopes and Sudduth Associates, Inc. [H&S] entered into a contract whereby H&S agreed to convy to plaintiff the property at 229 West 30th Street, Wilmington, Delaware for $11,500.00. The purchase price was to consist of $1,200.00 payable in installments and the assumption by H&S agreed to convey to plaintiff the amount of $10,300.00. On June 6, 1972, prior to execution of the contract, the holder of the outstanding mortgage on the property had filed foreclosure proceedings. The foreclosure was based upon default in payments which occurred during the time
 
 *411
 
 that H&S had owned the property. In October, 1972, the property was posted for Sheriff’s sale, and on November 14, 1972, the sale took place. Prior to the sale, H&S attempted to secure financing: to permit plaintiff to acquire the property, but was unsuccessful. At the sale, the property was brought in by United States Department of Housing and Urban Development. Plaintiff was able to lease the property on a temporary basis until she was able to purchase the property for $12,000.-00 on March 7, 1974.
 

 H&S concedes that plaintiff is entitled to recover damages against it in the amount of $3,167.00 for the loss of bargain resulting from the breach of the contract.
 

 I
 

 The first issue which must be dealt with is the liability of defendant Linneaus L. Hoopes, Jr. [Ploopes]. Hoopes did not enter into the contract, having signed only as President of H&S. If he is to be found liable, it must be on the basis of misrepresentation or concealment. Plaintiff relies on §§ 2512 and 2513, Title 6, Delaware Code. These sections were enacted in 1965 by Chapter 46, Volume 55, Laws of Delaware, which was entitled “An Act to Amend Title 6, Delaware Code to Protect the Consumer Against Fraudulent and Deceptive Merchandising Practices”. The definition of “merchandise” appearing in 6 Del.C. § 2511(b) includes real estate within the protective provisions of the Act.
 

 Hoopes argues that, since he was unaware that the foreclosure proceeding had been commenced at the time the contract with plaintiff was negotiated, he lacked fraudulent intent at the time of the representation and therefore should not be held liable. The purpose of the Act was to forbid deception, fraud, false pretenses, false promises, misrepresentations, conceal-ments, suppression or omission of any material fact. The only reference to “intent” in this section is that the outlawed action be done “with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . 6 Del.C. § 2513(a). Fraudulent intent in connection with the making of such unlawful practice is not requisite to the availability of the remedies of the statute. In Re Brandywine Volkswagen, Ltd., Del.Super., 306 A. 2d 24 (1973), aff’d Del.Supr., 312 A.2d 632 (1973). The records of H&S showed that the last monthly payment which H&S had paid on the mortgage was on December 7, 1971 and that a check dated March 15, 1972 in the amount of $252.00 had been refunded by the mortgagee, and that H&S had made no monthly payments thereafter to the contract date. From these facts, H&S was on notice that the mortgage was in default and subject to foreclosure. Hoopes was not a mere employee of H&S ; he was its president and an active participant in its operation. Whether the information was actually known to him at the time or not, it was readily available to him. Under these facts, his negotiations with plaintiff, predicated upon the continued existence of the mortgage after settlement with plaintiff, constituted a concealment or omission of a material fact in violation of 6 Del.C. § 2513(a). I find that the elements of § 2513(a) have been met constituting this concealment or omission to be an unlawful practice entitling plaintiff to recover against Hoopes. See 6 Del.C. § 2525.
 

 II
 

 Plaintiff also claims damages for lost profits which she anticipated earning if the property had been available to her for such use. She testified that she had previously taken care of elderly people and that based upon the contract to buy this property, she had contracted with the Geriatrics Services to provide lodging and care for three elderly people. She testified that under this arrangement she would have received $188.00 per month per person, or a total of $564.00 per month gross income. She further testified that her ex
 
 *412
 
 penses for providing for these people would have been $300.00 per month, leaving a net profit of $264.00 per month. Defendants have put in no evidence on this subject, but contend that plaintiff’s evidence is not sufficiently specific to be relied upon. In response, plaintiff suggests that the Court may take judicial notice of fundamental costs and may appropriately increase the expenses, thereby reducing the per month claim for damages. The Court notes that according to plaintiff’s figures, plaintiff would be realizing a 46% profit on the gross income. While, based upon the evidence, the Court might properly base damages on plaintiff’s figures, in the absence of other figures, the Court concludes that a profit of 25% on gross income is reasonable. Accordingly, the Court fixes the lost net income at $141.00 per month. This figure, applied to the thirteen months for which plaintiff claims damages, gives a total of $1,833.00 from which plaintiff concedes there should be deducted $616.00 as an offset of other income received. According to the above calculation, the damages for lost net income are $1,217.00.
 

 Defendants argue that plaintiff is not entitled to this sum in that she has not shown an effort to mitigate damages. There are several answers to this. First, plaintiff did attempt to arrange other financing so that she could acquire the property and this was unsuccessful. The second is that in view of the uncertainty as to how long plaintiff would be able to continue to occupy the property, she was not in a position to proceed with the nursing home enterprise which she had planned. While in retrospect it is evident that plaintiff could have proceeded with the enterprise, this was not foreseeable at the time, and plaintiff was not. under a duty to do more than she did do under the circumstances.
 

 Ill
 

 With respect to plaintiff’s claim for exemplary or punitive damages, I do not find the element of ill will, malice or intention to cause injury to plaintiff which would support this claim while defendant’s failure to ascertain from its own records and from the mortgagee the status of the mortgage at the time of the contract for the sale of the property is a proper basis for claim for ordinary damages, it cannot be said that defendants’ failures constituted wilful and wanton conduct for which it should be held chargeable for exemplary or punitive damages. See White v. Metropolitan Merchandise Mart, Del.Super., 107 A. 2d 892 (1954); Reynolds v. Willis, Del.Supr., 209 A.2d 760 (1965); Guthridge v. Pen-Mod, Inc., Del.Super., 239 A.2d 709 (1967).
 

 Judgment will be entered in favor of plaintiff against defendants in the amount of $4,384.00 and costs.
 

 It is so ordered.