MOUNT PLEASANT SCHOOL
DISTRICT, Petitioner,

v.

The Honorable Hiram W. WARDER, Judge
of the Family Court of the State of Dela-
ware in and for New Castle County, Re-
spondent.

MOUNT PLEASANT SCHOOL
DISTRICT, Petitioner,

v.

Leo F. DODD, a minor by his guardian
ad litem Leo E. Dodd, Respondent.

Superior Court of Delaware,
New Castle.

Submitted June 6, 1977.
Decided June 21, 1977.

Lawrence A. Hamermesh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioner.

Thomas G. Hughes, of O'Donnell & Hughes, Wilmington, for respondents.

Regina M. Small, Deputy Atty. Gen., Dept. of Justice, Wilmington, amicus curiae.

TAYLOR, Judge.

This involves two actions brought by Mount Pleasant School District to test the validity of an Order entered by Judge Hiram W. Warder, Judge of the Family Court of the State of Delaware. One action seeks a writ of prohibition to prevent the Order from being put into effect by the Judge. The other action seeks to have the Judge's Order set aside under a writ of certiorari.

It was agreed between the parties that no material facts are in dispute and that the actions could be decided upon briefs and argument. Since both actions involve common questions of law, the briefing, argument and decision have been consolidated.

I

Judge Warder's Order which is under attack involved Leo F. Dodd, who was 16 years of age at the time of the Order. At all times pertinent to these proceedings, Leo Dodd has been a resident of the Claymont School District. Leo Dodd's involvement with Family Court commenced October 23, 1975 upon a complaint filed by the

Claymont High School charging him with truancy. Thereafter, there followed a succession of charges that the minor was uncontrolled, the last charges being brought on January 3, 1977. It appears that the last charges were withdrawn and the withdrawal was approved by Judge Daniel F. Kelleher on February 17, 1977. The petition for withdrawal attached a letter from Dr. Floyd S. Cornelison, Jr., recommending that a transfer of Leo Dodd from Claymont High School to Mount Pleasant High School be given serious consideration. On March 9, 1977 Judge Warder wrote to Dr. Michalcewiz of the Mount Pleasant High School directing that Leo Dodd be transferred from the Claymont High School to the Mount Pleasant High School. It is this directive [1] which is challenged in these proceedings.

It appears that Leo Dodd received private psychiatric care during which the conclusion was reached that Leo Dodd's problem related in part at least to the environment at Claymont High School. It appears that the father of Leo Dodd contacted petitioner requesting the transfer and on February 21, 1977 the transfer was refused by petitioner. Apparently, upon learning of the refusal, without further proceeding in the Family Court and without affording petitioner an opportunity to be heard, Judge Warder issued the March 9, 1977 directive.

## II

Many of the functions of providing free public education have been vested in local school boards which provide those services within geographical areas of the State known as reorganized school districts.[2] The formulation of general policy relating to educational matters rests with the State Board of Education. 14 *Del.C.* § 101. The local school board has "the authority to administer and to supervise the free public schools of the reorganized school district and . . . to determine policy and adopt rules and regulations for the general administration and supervision of the free public schools of the reorganized school district. 14 *Del.C.* § 1043.

Generally speaking, the statutory locus for receiving public education is the public school in the school district in which the person resides. 14 *Del.C.* § 202(c). Transfers of pupils are permitted subject to the limitation that "no pupil shall be transferred from 1 reorganized school district to another reorganized school district without the written approval of the school board [sic] of both the sending and receiving districts." 14 *Del.C.* § 602(a).[3]

■ The vesting of broad powers in the local school board must carry with it the power to take all steps reasonably necessary to carry into effect those powers. Accordingly, it has been held that the power to contract implies the susceptibility to suit and the power to litigate. *Morris v. Board of Education of Laurel School District*, D.Del., 401 F.Supp. 188 (1975). Similarly, the power to appoint personnel is accomplished by the implied susceptibility to suit and the power to litigate a hiring dispute. *Newman v. Board of Education of the Mount Pleasant School Dist.*, Del.Supr., 350 A.2d 339 (1975).

■ The proposition is generally accepted that "the authority of a school district to sue or be sued appears to be unquestioned, even in the absence of an authorizing statute." 68 *Am.Jur.2d*, Schools, § 16, p. 372; 79 *C.J.S.* Schools and School Districts

---

1. The parties have treated Judge Warder's letter of March 9, 1977 as an Order and it will be treated as such in this Opinion.

2. The use of the word "reorganized" in describing school boards and school districts had particular significance in 56 Del.Laws Ch. 292, which dealt with school reorganization. Since it has no significance in this discussion, the word "reorganized" will be omitted.

3. It is noted that 14 Del.C. § 603 as amended by 60 Del.Laws Ch. 486 relaxes the statutory requirement with respect to transfers between certain school districts, including both the Claymont School District and the Mount Pleasant School District provided certain requirements are satisfied. The parties have not addressed themselves to this provision and this Court will not determine the effect of this provision on the status of the parties here.

§ 428(a), p. 315. I conclude that the power of the school district to litigate with respect to matters which are within its statutory authority also includes the power to protect its authority from encroachment.

■ Respondents contend that this authority does not rest with the local school board because of the power vested in the State Board of Education to adopt rules and regulations "consistent with the laws of this State for the maintenance, administration and supervision throughout the State of a general and efficient system of free public schools . . . ", and in particular the power of the Board to prescribe rules and regulations "governing the admission of pupils from the schools from 1 district to the schools of another district . . . ". 14 *Del.C.* § 122(a) & (b)(9). It does not appear that the State Board of Education has undertaken to establish standards or otherwise provide for the manner or condition of transfer of a pupil from one school district to another other than to provide for standards for the transfer of records and credits. I do not find that the existence of regulatory power in the State Board of Education has the effect in this instance of depriving the local school board of its authority to make a determination with respect to transfer of a pupil and hence it does not deprive the local school board of its power to protect that authority through litigation.

Similarly, the existence of the general control and supervision over the public schools of the State including the power to decide controversies and disputes involving the administration of the public school system does not prevent the local school board from protecting by litigation the statutory authority vested in it. 14 *Del.C.* § 121(7).

■ I conclude that petitioner had the power to institute the petition for writ of prohibition. Since respondents have not addressed themselves to the distinction between the two proceedings, the Court will accord the certiorari proceeding the benefit of the above holding.

■ Respondents also contend that even if petitioner has standing to bring these proceedings, it can only do so through the Attorney General. This position is strongly opposed by petitioner and by the Attorney General, who has filed a brief as amicus curiae.

Respondents cite 14 Del.C. § 109 to support their position. The section provides:

"If in the execution of this Title it is necessary to institute proceedings at law or in equity for or on behalf of the Board or any reorganized school district, the Attorney General, when so requested by the Board, shall institute and conduct such proceedings."

This is a provision of long standing, having been first adopted in 1923. 33 *Del.Laws* Ch. 181. Subsequent legislation has specifically required the Department of Justice to provide legal services to State instrumentalities and agencies and has forbidden them to employ other counsel. 29 *Del.C.* § 2501, § 2504 and § 2507. However, those provisions are made inapplicable:

"to the University of Delaware or to any school district or special school district of this State, and these organizations may each employ their own attorney or attorneys, notwithstanding § 2507 of this title, . . . ." 29 *Del.C.* § 2515.

This language is a clear recognition that, with the exception stated therein, which is not applicable here, school boards may conduct their legal affairs through attorneys other than those of the Department of Justice.[4]

### III

The action of the Family Court in directing the transfer of the minor from the high school in his residential district to a high school in an adjoining district is justified by respondents by the statutory powers of the Court conferred by 10 Del.C. §§ 921 and 925. § 921 grants to the Family Court exclusive jurisdiction in proceedings con-

---

4. The position taken by the Attorney General precludes the issue discussed in *Darling Apart-* ment Co. v. *Springer*, Del.Supr., 25 Del. 420, 22 A.2d 397 (1941).

cerning (1) any child alleged to be dependent, neglected or delinquent, (2) any child charged with delinquency involving violation of any law (with the exception of certain specified crimes), (3) enforcement of any law for the education, protection, control, visitation, possession, custody, care or support of a child, (4) judicial consent to employment, medical care or military enlistment, (5) termination of compulsory school attendance, (6) actions involving conduct imperiling the family relationship, (7) liability for support of poor relatives, (8) consent to marriage, (9) reciprocal court proceedings involving non-residence, (10) and violation of motor vehicle laws. § 925 grants the Court authority to (1) conserve the peace, (2) act as committing magistrate, (3) determine and punish civil and criminal contempts, (4) issue process, (5) handle matters assigned to it by another Court, (6) transfer a proceeding from one County to another, (7) process forfeited bonds, (8) the Judges to sit separately or jointly, (9) hear, determine, render and enforce judgments, (10) assess fees, costs and fines, (11) revise prior orders, (12) punish for contempt, (13) administer oaths, (14) appoint guardians ad litem, and (15) "enter such orders against any party to the action as the principles of equity appear to require."

■ It is clear from this enumeration of powers that the Family Court has been vested with extensive powers to deal with problems of minors. These powers include the broad powers inherent in a Court of equity to deal with those problems of minors. *Wife S. v. Husband S.*, Del.Ch., 295 A.2d 768 (1972). It is true also that the Family Court is empowered to provide for the education of minors. 10 *Del.C.* § 921(3). However, with respect to the exercise of this function, it should be noted that the provision is couched in terms of enforcement of any law of this State for the education of children.

The enumeration of powers described above nowhere contains language indicating a legislative intent that the Orders of the Family Court may be in contravention of specific statutory provisions. It has been noted in an earlier portion of this opinion that the general provision is that those who attend public school shall attend the school in the district where they reside. 14 *Del.C.* § 202(c). This restriction is not absolute. Provision for transferring pupils is found in 14 Del.C. § 602. The power to transfer a pupil from one school district to another rests upon the affirmative action of the school boards of the sending and receiving district. The school boards' control over transfers is couched in absolute terms.[5]

Whether the action of a school board in approving or disapproving a proposed transfer is subject to review by the State Board of Education pursuant to the powers vested in that Board under 14 Del.C. § 121 and § 122, or whether a Court can review the reasonableness of the action of the school board is not before the Court. Nor does the Court reach the question of whether the decision of the school board is immune under all circumstances from judicial override. See 73 *C.J.S.* Public Administrative Bodies and Procedure §§ 164 & 165, pp. 506–7; 2 *Am.Jur.2d* Administrative Law § 558, pp. 367–70. Nor is it necessary here to reach the question of whether the Family Court is the appropriate tribunal to resolve those issues.

■ Where a public body is vested by statute with certain power and discretion, and where a Court proceeding undertakes to take action which affects in some way the exercise of those powers by the public body, the public body is entitled to be made a party to such proceeding and to have the full opportunity to be heard with respect to the legality of the proceeding and the factors which the Court should consider—and this should be done before the Court would be in a position to enter an order disposing of the matter. 2 *Am.Jur.2d* Administrative Law § 742, pp. 641–3; 73 *C.J.S.* Public Administrative Bodies and Procedure § 178, pp. 523–5. Moreover, any judicial action must give due consideration to the factors which should enter into a proper exercise of

---

5. *The possible effect of 14 Del.C. § 603 is discussed in Footnote 3 above.*

the statutory power by the public body. The factors which I have just mentioned are applicable with respect to petitioner.

There is nothing in the record to indicate that petitioner, as the school board of the proposed receiving district, was made a party to the proceeding or was afforded an opportunity to participate in a proceeding proposing to override the negative action of the school board. Also, there is nothing to indicate that the school board of the Claymont School District acted upon the proposed transfer or that it was made a party to the proceeding or had an opportunity to participate therein. There is nothing to indicate that judicial consideration was given to any of the factors which appropriately should be considered in connection with a proposed transfer pursuant to 14 Del.C. § 602.

## IV

■ In summary, the Mount Pleasant School District was entitled to be afforded an opportunity to participate in the judicial proceeding which affected its admission policy or determination and it could properly bring these actions to enforce that right.

■ Insofar as the Order of the Family Court dated March 9, 1977 undertook to nullify a refusal of the school board of the Mount Pleasant School District to permit the transfer of Leo Dodd to that school district or purported to authorize Leo Dodd to transfer to that school district, without the consents required under 14 Del.C. § 602 or without complying with 14 Del.C. § 603, the Order is declared void and of no effect.

IT IS SO ORDERED.