**Donald H. SMITH, Plaintiff,**

v.

**NEW CASTLE COUNTY VOCATIONAL–TECHNICAL SCHOOL DISTRICT, Albert E. Leonard, Carson Herr, and Conrad Shuman, Defendants.**

**Civ. A. No. 82–52 MMS.**

United States District Court,
D. Delaware.

Oct. 19, 1983.

Charles S. Knothe, Wilmington, Del., for plaintiff.

Jeffrey M. Weiner, Bayard, Brill & Handelman, P.A., Wilmington, Del., for defend-

ants New Castle County Vocational-Technical School District, Herr and Shuman.

Gary W. Aber, Biggs & Battaglia, Wilmington, Del., for defendant Leonard.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiff, Donald H. Smith, has brought suit against the New Castle County Vocational-Technical School District (the "Vo-Tech District" or "District") and Albert E. Leonard, an instructor at the Delcastle Technical High School ("Delcastle"), a school within the Vo-Tech District. Plaintiff has also instituted suit against Carson Herr, principal of Delcastle, and Conrad Shuman, superintendent of the Vo-Tech District, for negligent supervision of Leonard in his duties as an instructor. Plaintiff seeks compensatory and punitive damages.

■ Defendants Vo-Tech District, Herr and Shuman,[1] have moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. The parties, however, have referred to matters outside of the pleadings. The motion, therefore, will be treated as one for summary judgment and will be disposed of as provided for in Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).[2] The District, Herr and Shuman argue that all of plaintiff's claims against them are barred by the Eleventh Amendment of the United States Constitution, by sovereign immunity and, alternatively, by the Delaware Tort Claims Act, 10 *Del.C.* §§ 4001–4005 (Supp.1982). Finally, defendants seek summary judgment on the merits of plaintiff's claims if some or all of the claims are not barred by the Eleventh Amendment, sovereign immunity or the Tort Claims Act.

*Factual Background*

The following is a brief summary of the facts viewed most favorably to the plaintiff. *See Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 883 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). In September of 1978, a former Delcastle student informed Plaintiff that Leonard was accepting outside aviation repair work for his class. Plaintiff contacted Leonard, who agreed to have his class repair plaintiff's airplane engine in exchange for payment for parts and a small donation. In the spring of 1979, the class completed its work on plaintiff's engine and Leonard certified that the engine and the work performed satisfied Federal Aviation Administration standards. In January, 1981, plaintiff ran the engine for the first time since the overhaul and discovered that Leonard's class had repaired it improperly.

In June, 1979, plaintiff asked Leonard if he would undertake a second repair job and resurface the wings and tail sections of his airplane. Leonard replied that he did not wish to do the job on his own in the summer. When plaintiff later approached him in September, 1979, Leonard agreed to take the job as a class project under the same terms as the engine repair. For various reasons, Leonard was unable to finish the project in time to satisfy plaintiff. In February, 1980, plaintiff retrieved the unfinished tail sections from Leonard and had them resurfaced commercially. In June, 1980, after receiving a disquieting letter from Leonard, plaintiff complained to Superintendent Shuman who then ensured that plaintiff's unfinished wings were returned to him.

Throughout this period Delcastle maintained a policy that any person seeking to have repair work done by students would be required to release the school and the instructor from liability for damages or loss. In addition, Delcastle appears to have had a policy that aviation repair work would not be performed at all. Plaintiff,

---

**1.** Hereinafter for the sake of convenience, these defendants will be referred to collectively as "defendants" unless otherwise indicated.

**2.** The Court allowed the parties fifteen days after oral argument to submit any additional memoranda of law and affidavits appropriate for a summary judgment motion.

however, was never informed of these policies.

## I. *Eleventh Amendment Immunity*

 The Court must first determine whether a vocational technical district is an alter ego of the State of Delaware so as to preclude a federal court, under the Eleventh Amendment, from exercising jurisdiction. The Eleventh Amendment bars a federal court from entertaining suits for money damages against a state governmental body when the State is the real party in interest. Thus, the State need not actually be named as a formal party if the named party is merely an alter ego of the state. *Blake v. Kline*, 612 F.2d 718, 721 (3d Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). In *Urbano v. Board of Managers*, 415 F.2d 247 (3d Cir. 1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), the Third Circuit Court of Appeals described the factors which a judge should consider in determining whether a governmental entity is the state's alter ego under the Eleventh Amendment:

> ... [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.

> Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

415 F.2d at 250–51, *quoting, Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd*, 386 F.2d 179 (2d Cir.1967), *cert. denied*, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968); *see also Blake v. Kline*, 612 F.2d at 722. Applying these factors to the instant case, the Court holds that defendants have failed to establish that the Vo-Tech District is the alter ego of the State of Delaware for purposes of the Eleventh Amendment.

In *King v. Caesar Rodney School District*, 396 F.Supp. 423, 427 (D.Del.1975), Judge Wright held that a school district in Delaware did not constitute an alter ego of the State for purposes of the Eleventh Amendment. Applying the factors set forth in *Urbano*, the Court found that a local school district possessed sufficient autonomy from the state in terms of operation and administration to permit the court to exercise federal subject matter jurisdiction. *Id.* at 426–27. *See also Morris v. Board of Education*, 401 F.Supp. 188, 203–05 (D.Del.1975). Defendants seek to distinguish *King* on the ground that a vo-tech district is governed by a school board whose members are appointed by the governor for seven year terms, 14 *Del.C.* § 1064 (1974), while a school district is governed by an elected board. 14 *Del.C.* § 1051. Defendants also seek to distinguish *King* on the ground that a vo-tech district's authority to levy and collect taxes for school purposes is limited by the State General Assembly to a certain fraction of each $100 of assessed value of local real property. 14 *Del.C.* § 2601. In contrast, defendants explain, a school district's authority to levy taxes is determined by local referendum and not by the General Assembly. 14 *Del.C.* § 1902–03. Finally, defendants argue that the Vo-Tech District does not possess sufficient funds to pay the damages sought by plaintiff, approximately $112,000, and, therefore, would have to seek funds directly from the State treasury.

In response, plaintiff asserts that a vo-tech district possesses sufficient autonomy from the State so as to preclude a finding of Eleventh Amendment immunity. Al-

though appointed by the governor, plaintiff maintains that a vo-tech district school board has the authority under 14 *Del.C.* § 1029(b) to determine policy and adopt rules and regulations for general administration and supervision of schools and vocational centers within the district. Furthermore, plaintiff argues, under 14 *Del.C.* § 1064 such a school board must be composed of residents of the district. In addition, plaintiff reasons that 14 *Del.C.* § 2601, although placing a monetary limit on a vo-tech district's taxing power, provides such a district with a source of funds independent from any State funds. Plaintiff also contends that the Vo-Tech District possesses sufficient independent funds to pay any judgment awarded to him. Alternatively, plaintiff reasons that even were the Vo-Tech District unable to satisfy any judgment rendered, it could not seek satisfaction from the State because no statutory authority exists to render the State liable for the debts of a vo-tech district. Plaintiff concludes that a vo-tech district is more closely akin to a political subdivision than to an alter ego of the State.

The Court agrees with plaintiff. Applying the factors set forth in *Urbano*, this court holds that defendants have failed to establish that the Vo-Tech District is the alter ego of the State for purposes of the Eleventh Amendment. Each vo-tech district is a clearly defined geographic subdivision of the State, organized for the purpose of administering specialized public education in that area. All appointees of a vo-tech school board must be residents of the district in which they serve. 14 *Del.C.* § 1064. Although appointed by the governor, a vo-tech district school board possesses the same independent authority as the board of a school district. It determines policy, adopts rules and regulations, and administers the daily operations of the district in accordance with State laws and with the policies, rules and regulations of the State Board of Education. 14 *Del.C.* §§ 1029, 1043.

■ More importantly, defendants have failed to establish that any judgment in

favor of plaintiff will subject the State to liability. "The most important factor in the determination of eleventh amendment immunity is whether judgment will have to be paid from the state treasury." *Blake v. Kline*, 612 F.2d at 723. The District possesses a contingency fund of $130,000 which is available to satisfy unforeseen liabilities such as an adverse judgment. (Doc. 50 at 4–5—Loftus affidavit). Defendants claim that other contingencies may deplete this allowance prior to an entry of judgment in this case. Defendants, however, have not established, and the Court has not found, a statutory basis for plaintiff to recover damages directly from the State. Thus, even if the Vo-Tech District is unable to satisfy a judgment awarded in this case, the judgment would not necessarily come out of the State treasury. Although the Vo-Tech District receives 75% of its funding from the State, it cannot use these funds to satisfy any judgment awarded to the plaintiff. *See* 14 *Del.C.* ch. 17; *Beck v. Claymont School District*, 407 A.2d 226, 229–30 (Del.Super.1979), *aff'd sub nom. Claymont School District v. Beck*, 424 A.2d 662 (Del.1980); *cf. Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Blake v. Kline*, 612 F.2d at 723–24. Although the District may seek additional funds from the State (Doc. 50 at 5), defendants have not established that the state would be obligated to assume this liability of the District. *See Morris v. Board of Education*, 401 F.Supp. at 205.

An examination of the remaining factors set forth in *Urbano* supports the conclusion that the Vo-Tech District is not an alter ego of the State for purposes of the Eleventh Amendment. Although the District performs a traditionally governmental function, is immune from State taxation and is governed by State appointed officials, it is largely autonomous in conducting its affairs, especially in relation to the acts that are subject to the plaintiff's claims—the administration of school projects.

■ The court concludes that the Vo-Tech District is primarily a semi-autonomous, local political entity that enjoys an existence independent of the State. It does not constitute an alter ego of the State, and defendants' claim to Eleventh Amendment immunity, therefore, is without merit.[3]

## II. *Sovereign Immunity*

■ Defendants have also raised the defense of sovereign immunity with respect to plaintiff's tort claims.[4] To determine whether some or all of defendants can successfully assert this defense, the court must apply the case of *Claymont School District v. Beck*, 424 A.2d 662 (Del.1980).

The Delaware Supreme Court recognized in *Beck* that reorganized school districts do not share in the State's sovereign immunity. It affirmed the Superior Court's finding that the autonomy granted by the General Assembly to local school districts rendered them responsible entities enjoying a legal status separate and apart from the State. 424 A.2d at 662–63. Defendants argue that the holding in *Beck* does not apply to vo-tech districts. For the same reasons set forth in support of their Eleventh Amendment immunity defense, defendants maintain that the relationship between the State and the District precludes a finding that the General Assembly waived sovereign immunity for vo-tech districts. In response, plaintiff claims that the Vo-Tech District is subject to suit for the same reasons, set forth in *Beck*, as are school districts. Plaintiff concludes that a vo-tech district does not share in the State's sovereign immunity.

The Court rejects defendants' contention that the *Beck* rule for school districts does not apply to vo-tech districts. As discussed *supra* at 818, both vo-tech districts and school districts are largely autonomous in matters of administration and operation. Vo-tech districts enjoy a sufficient degree of autonomy to warrant the conclusion that the holding in *Beck* should be extended to the vo-tech districts.[5]

## III. *Tort Claims Act*

The Tort Claims Act applies both to the Vo-Tech District and to the individual defendants in this case. The Tort Claims Act bars claims against "any public officer or employee ..." unless specifically allowed. 10 *Del.C.* § 4001. Thus, the Act clearly applies to the individual defendants, Herr and Shuman. With regard to the District, the Act expressly provides that school districts fall within its purview. Section 4003 states in relevant part that:

> Any political subdivision of the State, *including the various school districts*, and their officers and employees shall be entitled to the same privileges and immunities as provided in this chapter for the State and its officers and employees....

10 *Del.C.* § 4003 (emphasis added).

The scope of the State's privileges and immunities are set forth in section 4001.

> Except as otherwise provided by the Constitution or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by

3. Given this holding, jurisdiction is present over all defendants under 28 U.S.C. § 1331(a).

4. It is not clear whether the New Castle County Vo-Tech District is raising sovereign immunity as a defense to the plaintiff's contractual claims. Judicial decisions, however, in both the federal and state courts, have held that school districts are not immune from suit for breaches of their own contracts. *See Morris v. Board of Education*, 401 F.Supp. at 205; *Mount Pleasant School District v. Warder*, 375 A.2d 478, 480 (Del.Super. 1977). If defendants are asserting sovereign immunity as a defense to plaintiff's contractual claims, this aspect of their motion will be denied. The Court's discussion of sovereign im-

munity will, therefore, be limited to plaintiff's tort claims.

5. Because the court has found that the Vo-Tech District is not entitled to sovereign immunity, the question raised by the parties as to whether the Tort Claims Act, 10 *Del.C.* §§ 4001–4004, can act as an independent waiver of sovereign immunity is moot. It should be noted, nonetheless, that this question has been decided in defendants' favor in *Space Age Products v. Gilliam*, 488 F.Supp. 775, 778–80 (D.Del.1980), where the court held that the Tort Claims Act is not an independent waiver of sovereign immunity. *See infra* at 820.

a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where ... [certain enumerated] elements are present.

10 *Del. C.* § 4001.

The meaning of section 4001 with respect to the State was thoroughly discussed by Judge Stapleton in *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. at 778–780. The court stated that "the language of the statute and its legislative history suggest that it deals solely with official immunity and indemnity in those situations where sovereign immunity, for some independent reason does not apply." *Id.* at 780. Thus, because the Vo-Tech District has been found unprotected by sovereign immunity, the District is amenable to suit if any one of the three elements of section 4001 is not satisfied.[6]

These three elements of section 4001 bar claims against the State or its employees where:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the

public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence.

Section 4001 also places on the plaintiff the burden of proving the absence of one or more of the elements of immunity set forth in the section.

There are no reported Delaware court decisions under the Tort Claims Act, and the Act's legislative history consists of only a brief legislative synopsis. This legislative synopsis explains that the two basic purposes of the Act are:

[F]irst, by codifying existing common law standards, to discourage law suits which create a chilling effect on the ability of public officials and employees to exercise the far reaching decision-making authority which complex government demands of them; and conversely, to make clear that public officers and employees are fully liable where there [sic] exercise of authority is grossly negligent, the product of bad faith, or outside the scope of their official duties.

Legislative Synopsis, *quoted in Space Age Products, Inc. v. Gilliam,* 488 F.Supp. at 779.

■ The common law, as developed in Delaware, is set forth in *Shellburne, Inc. v. Roberts,* 43 Del.Ch. 485, 238 A.2d 331, 338 (Del.1968). There, the Delaware Supreme Court held that a public executive officer is immune from suit where he acts within the scope of his authority without bad faith, malice or improper motive. In *Simon v. Heald,* 359 A.2d 666 (Del.Super. 1976), Justice Christie, while still sitting on the Delaware Superior Court, characterized

---

**6.** This result is consistent with the dicta in *Beck,* 424 A.2d 662–63, where the Delaware Supreme Court stated:

By its specific terms that Act applies to school districts, § 4003, and, implicitly, seems to permit suit when the "act or omission complained of was done ... [with] gross or wan-

ton negligence." § 4001(3). Here the complaint alleges "willful or wanton" negligence on the part of the School District and thus, as a matter of pleading, it would appear to be within the express purview of the Act.
*Id.* 424 A.2d at 662–63.

the law on the immunity of executive officials as follows:

The law of governmental immunity in Delaware as it applies to the State, the State's agencies and its policy level officers is that there is no liability in tort for policy level decisions or discretionary actions done within the scope of official duty absent wanton or reckless conduct.

359 A.2d at 667. The court held that lower level officials are immune from personal liability only in those instances where they are involved in discretionary rather than ministerial functions. The Court stated that where an employee is not exercising discretion but merely performing routine duties, that employee does not enjoy immunity. The holdings in *Simon* and *Shellburne* are largely consistent with the common law on the immunity of public officials as it has developed in other jurisdictions. *See* W. Prosser, *The Law of Torts* § 132 (4th ed. 1971).

In light of the legislative synopsis and prior Delaware case law, the Tort Claims Act clearly combines elements of the common law rules applying to executive and lower level officials. That is, public officials are exempt from suit under section 4001 when performing official duties involving the exercise of discretion and when performed in good faith and without gross or wanton negligence.

### A. The Vo-Tech District

In Count I, plaintiff alleges that his airplane engine was negligently assembled under the control of the Vo-Tech District. The parties have analyzed the question of the Tort Claim Act's application to the *District* in terms of its application to *Leonard* as an individual. In other words, if Leonard's actions were of a type subject to suit under the Tort Claims Act, the District will also be subject to suit under the Act. Defendants argue that because Leonard's actions arose out of his official duties and are, therefore, protected by 10 *Del.C.* § 4001(1), so are the District's actions protected. In response, plaintiff argues that the District is subject to suit because Leonard's negligent repair of the engine was a non-discretionary act beyond the outer parameters of his immunity under section 4001(1).

Defendant's contention that the District is immune from suit because Leonard was performing an official duty is unpersuasive. As discussed above, the plain language of section 4001(1) does not exempt from suit an employee merely because he performed an official act or duty. It protects only specifically enumerated acts or omissions or acts involving the exercise of discretion. Determining whether a particular act is discretionary, however, is not always easy. *See Simon v. Heald,* 359 A.2d at 668. As noted in *Biloon's Electrical Service, Inc. v. City of Wilmington,* 401 A.2d 636 (Del.Super.1979), *aff'd,* 417 A.2d 371 (Del.1980):

... [A]ttempts to effectuate this concept [of immunity by] using "discretion" as a touchstone have resulted in inconsistency, confusion and criticism. One court described the semantical difficulties thusly:

"... it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit some discretion in the manner of its performance, even if it involved only the driving of a nail." *Ham v. Los Angeles County,* Cal.App., 46 Cal.App. 148, 162, 189 P. 462, 468 (1920).

401 A.2d at 640–41.

One of the difficulties in determining whether Leonard's acts fall within subsection 1 involves the characterization of his activities. Plaintiff characterizes defendant's action as the negligent repair of an engine and the subsequent incorrect certification of satisfactory performance. Standing alone, this type of act would not appear to be the type upon which the Tort Claims Act would bar suit. Although the repair of an engine involves some discretion, as do all acts, it can hardly be characterized as an exercise of the far reaching decision-making authority which complex governments demand of public officials. Leon-

ard's actions, however, involved more than the repair of an airplane engine.

Leonard's involvement with the repair of plaintiff's engine stemmed not only from his status as a licensed aviation mechanic, but also from his position as an instructor at Delcastle. A suit against a school teacher for negligently conducting his classes would seem to be the type of suit the Tort Claims Act was designed to preclude. A teacher has a great deal of discretion in deciding how to conduct his class. It is precisely this type of discretion that needs protection from "lawsuits which create a chilling effect." Legislative Synopsis, *supra*, at 13.

■ Leonard, however, did more than supervise his class's repair of plaintiff's engine: he certified that the engine was repaired and inspected in accordance with Federal Aviation Agency regulations. *See* 14 C.F.R. Part 32, App. B. The certification of the engine as complying with federal standards cannot be considered a discretionary act within the meaning of 10 *Del.C.* § 4001. Leonard's action was hardly the sort that public policy should protect from the chilling effect of potential lawsuits. Engine certification, unlike classroom supervision, need not be immunized to ensure the smooth operation of government-sponsored education. Leonard's certification arose outside of his traditional duties as a teacher of a vo-tech class.[7] The only "discretion" involved in certification was in determining whether the engine met a set of prescribed federal standards—not the type of discretion that is involved in governmental policy-making or in deciding how to teach a class. *See Simon v. Heald,* 359 A.2d at 668–69.

Plaintiff's claim of negligence against the Vo-Tech District is, therefore, not barred by the Tort Claims Act in its entirety. Plaintiff, at least insofar as the Tort Claims Act is concerned,[8] can seek damages against the District flowing from Leonard's alleged negligence in certifying that the engine had been properly repaired. Plaintiff will not, however, be able to seek damages based upon the alleged negligent repair of his engine.

■ Plaintiff seeks in Count XI to recover punitive damages from the Vo-Tech District on the basis that, through its agent Leonard, the District overhauled plaintiff's aircraft engine in a wantonly reckless manner, possibly endangering his life. Defendants concede that a claim for wanton negligence is not barred by the Tort Claims Act. (Doc. 40 at 8–9). *See* 10 *Del.C.* § 4001(3); *Claymont School District v. Beck,* 424 A.2d at 663. Count XI, therefore, if it merely sought compensatory damages, would not be barred by the Tort Claims Act.

■ Defendant Vo-Tech District contends, however, that the Delaware Supreme Court would not allow the recovery of punitive damages against a political subdivision such as the Vo-Tech District, or alternatively, that the Court would limit such recovery to those situations in which a governmental entity authorized, ratified, or participated in the particular act of its agent or servant. Plaintiff argues that since the Tort Claims Act does not prohibit the recovery of punitive damages, they are recoverable.

The parties have not cited, nor has Court found, any case under Delaware law on this issue. The General Assembly has taken a restrictive attitude towards the waiver

---

7. Indeed, because it does not appear Leonard's FAA certification was related to his teaching duties, the Court questions whether the District can be liable on a respondeat superior theory for Leonard's FAA certification. The parties have not briefed the question and the Court will, therefore, not now decide it.

8. As suggested in note 7, *supra*, there may be other reasons, not asserted in defendants' mo-

tion, relieving the District from liability for Leonard's certification. For example, defendants have not challenged plaintiff's respondeat superior theory, nor have they argued that the damages complained of were not proximately caused by the alleged negligent certification. The Court, therefore, will not address these issues.

of sovereign immunity, *see Pajewski v. Perry*, 363 A.2d 429, 435–36 (Del.1976), suggesting that the Delaware Supreme Court would not recognize a punitive damage claim against a political subdivision. *Cf. City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–63, 101 S.Ct. 2748, 2755–58, 69 L.Ed.2d 616 (1981) (municipalities at common law not subject to punitive damages). Without an indication that the Delaware courts would allow recovery of punitive damages on a tort claim against a political subdivision of the State, this Court has no basis to find that such a claim would be recognized by the Supreme Court of Delaware.

More importantly, plaintiff has not pointed to, and the record does not reveal, any ratification, participation or authorization by the Vo-Tech District of Leonard's allegedly grossly negligent repair of plaintiff's engine. "The standard rule is that punitive damages are not available against an employer, including a municipality as an employer, based solely on a theory of vicarious responsibility for the acts of its employees." *Carpenter v. Dizio*, 506 F.Supp. 1117, 1125 (E.D.Pa.), *aff'd*, 673 F.2d 1298 (3d Cir.1981). *See* 1 A.L.R. 4th 448 (1980 & Supp.1982).

Thus, without any indication that the Delaware Supreme Court would recognize plaintiff's claim for punitive damages and in the absence of any involvement on the part of the District, summary judgment will be entered in favor of the Vo-Tech District on Count XI.

### B. *Herr and Shuman*

In Counts III and IV, plaintiff alleges that defendants Herr and Shuman negligently supervised Leonard in his duties as instructor of the class that repaired plaintiff's engine. In Counts IX and X, plaintiff alleges that Herr and Shuman were similarly negligent in supervising Leonard's conduct as instructor of the class that repaired plaintiff's airplane wings and tail section.

Defendants, relying upon section 4001(1), argue that they are immune from suit because plaintiff's claim is premised upon acts or omissions of Herr and Shuman which arose in connection with the enforcement of a provision of the Delcastle Faculty Handbook. Plaintiff had alleged that Herr and Shuman failed to establish a system to insure proper authorization of craft projects as required by the Faculty Handbook. The Handbook provides that: "All projects must be authorized by the Craft Coordinator in a work order prior to the beginning of any work." (Doc. 44, App. I at A–16a). Plaintiff now argues, in response to defendants' Tort Claims Act position, that Herr and Shuman's actions did not arise in connection with the enforcement of a rule or regulation, were non-discretionary, and were done with gross negligence. Replying to the plaintiff's argument, Herr and Shuman argue that since plaintiff has not alleged gross negligence in his complaint, he cannot assert that ground unless he amends his complaint.

As a preliminary matter, the Court agrees with the defendants that plaintiff was required to plead gross negligence in order to fall within the exception of section 4001(3). Plaintiff has had ample time to amend his complaint after oral argument and has not done so. Plaintiff, therefore, will be considered to have abandoned his argument that defendants Herr and Shuman were grossly negligent.[9]

In addition, plaintiff's other arguments for taking Herr and Shuman outside of section 4001(1) are without merit. The Court is not convinced by defendants' argument that defendants were enforcing a rule or regulation.[10] Rather, the Court concludes for the reasons stated below that

---

9. The record in this case contains little evidence to support a claim of gross negligence against Herr and Shuman. The Court assumes that plaintiff's counsel, aware of this record, chose not to amend plaintiff's complaint in light of the strict requirements of amended Rule 11.

10. It is unlikely that "statutes, rules or regulations" as used in section 4001(1) includes internal administrative procedures of government agencies.

Herr and Shuman were performing acts which arose out of the performance of an official duty involving the exercise of discretion.

■ Shuman is the superintendent of the Vo-Tech District. At common law public officials in executive positions were immune from suit if their actions fell within the scope of their official duties. *See Shellburne, Inc. v. Roberts*, 238 A.2d at 338. Although one could read section 4001(1) as extending a narrower grant of immunity to state executive officers than that described in *Shellburne*, the Act was intended to codify the common law rather than modify or alter it. Legislative Synopsis, *supra* at 13. To conclude that Shuman would be immune under the common law but not under the Act would be inconsistent with the intent of the General Assembly.

■ Moreover, Shuman's actions with respect to plaintiff were discretionary. The gist of plaintiff's complaint is that Shuman failed to establish adequate procedures to insure that instructors accepting outside repair work would comply with District rules and policy, including requiring a waiver of liability and refusing to accept aviation repair work. (Doc. 44 at 4–5). In promulgating policies and procedures involving aviation repair work, however, Shuman merely exercised his policy-making judgment and discretion. Shuman's job responsibilities did not involve routine procedures which were the product of training and orders as did the police officers' responsibilities in *Simon v. Heald*, 359 A.2d at 669. Summary judgment, therefore, will be entered in favor of defendant Shuman on Counts IV and X.

■ Similarly, Herr's actions involved the exercise of discretion. The gist of the complaint is that Herr, as principal of Delcastle, failed to implement adequate clearance procedures at the school. Herr's decision to install or not to install a particular type of clearance procedure, however, can hardly be characterized as ministerial or as the product of routine training. Conse-

quently, the Court will enter summary judgment in favor of defendant Herr on Counts III and IX.

## IV. *Breach of Contract*

In addition to his tort claims, plaintiff alleges several contractual claims against the various defendants in this case.

■ In Count V plaintiff alleges that the Vo-Tech District breached a contract to refurbish the wings and tail sections of his airplane. Plaintiff claims that Leonard had apparent authority to contract on behalf of the District. Defendants argue in their motion for summary judgment that plaintiff has not asserted any grounds which would support this apparent authority claim. Defendants contend that if plaintiff relied on any actions taken by Leonard, his reliance was unreasonable and insufficient to hold the District liable as Leonard's principal. In response plaintiff maintains that the question of apparent authority involves issues of fact which cannot be resolved on summary judgment. Plaintiff also asserts that defendants should be estopped from disclaiming liability for Leonard's actions.

In recent years, the Delaware Supreme Court has thoroughly examined the issue of apparent authority. *See Billops v. Magness Construction Co.*, 391 A.2d 196, 198–99 (Del.1978); *International Boiler Works Co. v. General Waterworks Corp.*, 372 A.2d 176, 177 (Del.1977); *Finnegan Construction Co. v. Robino-Ladd Co.*, 354 A.2d 142, 144–45 (Del.Super.1976). In *Billops*, the Court stated that:

> The concept of apparent agency or authority focuses not upon the actual relation of a principal and agent, but the apparent relationship. Manifestations by the alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal create an apparent agency from which spring the same legal consequences as those which result from an actual agency. The manifestations may be made directly to the third party, or may be made to the community in general, for example by way of advertising.

In order to establish a chain of liability to the principal based upon apparent agency, a litigant must show reliance on the indicia of authority originated by the principal and such reliance must have been reasonable. [citations omitted]

391 A.2d at 198. *See also Carolina Freight Carriers Corp. v. C.W. Transport, Inc.*, C.A. No. 81–299, slip op. at 2–3, (D.Del. July 7, 1983).

Viewing the facts most favorably to the plaintiff, the Court believes that a jury could find that plaintiff reasonably relied upon indicia of authority, originated by the District, indicating that Leonard possessed authority to contract on the District's behalf.

■ Plaintiff could conceivably prove at trial that the District placed its instructors in positions that might have lead the general public reasonably to believe that the instructors held authority to contract for the District. A principal may create apparent authority "by appointing a person to a position ... which carries with it generally recognized duties" or by permitting a person "to do an act in such a way as to establish in a community a reputation for having authority to act, either by directing the agent so to represent, or by directing him to act and doing nothing to prevent the spread of such information by the agent or others...." Restatement (Second) of Agency § 27 comment a (1958). As the court in *Finnegan Construction* explained, apparent authority exists "when a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business uses and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act in question...." 354 A.2d at 145, *quoting Frye v. E.I. DuPont de Nemours & Co.*, 129 Me. 289, 151 A. 537 (1930). *Cf. Tuskegee Institute v. May Refrigeration Co., Inc.*, 57 Ala.App. 344, 328 So.2d 598 (1976) (University employees' positions not such as to lead one to believe they had authority to

contract for air-conditioning unit on behalf of University). On the current record the Court cannot say as a matter of law that the District did not create an impression in the community that the District's vocational teachers had power to accept repair work for their classes.

Leonard's position as a vocational teacher is not necessarily the only indicia of authority that plaintiff could have relied on. Leonard showed plaintiff a business card which stated that plaintiff was an aviation instructor at Delcastle. Plaintiff observed stationery in Leonard's office that had printed on it Leonard's name and "Delcastle Technical High School." The parties have not indicated to the Court whether the District supplied these business cards and stationery to Leonard. If it did, these items might be found by a jury to be further indicia of authority originating with the District. *See* Restatement (Second) of Agency § 27 comment a, at 104.

Defendant has presented strong evidence which would defeat an apparent authority claim. Plaintiff admitted that administrative personnel at other vocational-technical schools informed him that their schools did not perform aviation repair work. Perhaps a jury would find from this that plaintiff should have realized Leonard was powerless to contract on behalf of the District. In addition, plaintiff corresponded with Leonard at his home, not at his office at Delcastle. Moreover, plaintiff wrote checks payable to the order of Leonard, not Delcastle, when paying for parts. Defendant will certainly be able to argue to a jury that a reasonable man in plaintiff's position would have known Leonard was unauthorized to contract for the District and/or that plaintiff was dealing with Leonard in a capacity other than as an aviation instructor at Vo-Tech.

Plaintiff's allegations, however, do raise a material issue of fact that cannot be determined on the present record in a motion for summary judgment. The motion of defendant New Castle County Vo-Tech

District for summary judgment on Count V will, therefore, be denied.[11]

Plaintiff also seeks punitive damages for breach of contract from the Vo-Tech District. In Count XIII plaintiff alleges that, by letter dated May 13, 1980, the Vo-Tech District, "through its agent, A.E. Leonard breached in a threatening and hateful manner the contract to recover the wings in question."

Defendant contends, relying on *J.J. White, Inc. v. Metropolitan Merchandise Mart,* 48 Del. 526, 107 A.2d 892 (Del.Super. 1954), that under Delaware law punitive damages are not recoverable in an action for breach of contract. Plaintiff, relying ·on *Oliver B. Cannon & Son, Inc. v. Fidelity and Casualty Co.,* 484 F.Supp. 1375 (D.Del.1980), and *Nash v. Hoopes,* 332 A.2d 411 (Del.Super.1975), replies that punitive damages are available in contract actions where the breach of contract is similar to a tort or where defendant's conduct is willful and wanton.

■ Plaintiff is correct in asserting that Delaware courts have recognized a claim seeking punitive damages for breach of contract where the defendant's actions are similar in nature to that of a tort. But the cases plaintiff relies on do not support maintenance of a cause of action for punitive damages arising merely out of an intentional breach of contract. Something more must be shown, making the breach similar in character to an intentional tort. *Oliver B. Cannon* involved the breach of an insurance contract by an insurer. The court explained that "the insurer owes a strict duty of good faith in its dealings with the insured and because this duty has been likened to a fiduciary duty, a breach of that duty approximates a tort." 484 F.Supp. at 1387. Moreover, the punitive damages may be awarded against an insurer only upon proof that the insurer "acted 'maliciously and without probable cause, for the purpose of injuring its insured.'" *Id.* at 1388, *citing Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970). *Nash v. Hoopes* also involved more than an intentional breach of contract. There, a purchaser of real estate brought suit against a vendor after the vendor hid the fact that his mortgage was in default. Even then, the court found a lack of "ill will, malice or intention to cause injury" necessary for an award of punitive damages. 332 A.2d at 414.

■ The contract between plaintiff and Leonard did not create a fiduciary relationship, as between insurer and insured, nor did it involve tortious conduct such as concealment of a fact unknown by a purchaser. Furthermore, plaintiff has alleged no facts demonstrating malice or an intent to injure as is required by *Nash* and *Oliver B. Cannon.* The May 13, 1980, letter may contain some rude terms and perhaps even some veiled threats, but it is far from tortious in character.[12]

Moreover, while plaintiff has alleged facts which would support a finding that Leonard possessed apparent authority to bind the Vo-Tech District, there is no evidence in the record to support the conclusion that the District authorized or participated in Leonard's allegedly tortious like breach of plaintiff's contract. *See Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1278 & n. 16 (3d Cir.1979); *Restatement of Torts* § 909. Shuman first learned of the May 13, 1980, letter when plaintiff's wife called him to complain. At that time Shuman ordered Leonard to return the wings to plaintiff. Finally, for the reasons stated *supra* at 823, the Court does not believe that a claim for punitive damages against a political subdivision

---

11. Because the Court has denied summary judgment on Count V, it need not address plaintiff's alternative theory that the District should be estopped from disclaiming liability.

12. Only two sentences of the May 13 letter can be viewed as at all threatening. Leonard wrote, in complaining about constant threats against him by plaintiff, that: "Something you should learn is that I don't take threats very well," and "One last thing, I would think three times before I consider giving me any trouble." In the context of Leonard's entire letter, these comments are hardly sufficient to give rise to a punitive damage award.

would be recognized in Delaware. Summary judgment, therefore, will be entered in favor of the Vo-Tech District on Count XIV.

 In Counts VII and VIII plaintiff seeks damages against Herr and Shuman for breach of contract. Herr and Shuman were not, however, parties to any contract with plaintiff nor can they be considered principals bound by Leonard's actions under an apparent authority theory. No reasonable person could have believed that Leonard had authority to contract on behalf of Shuman and Herr *as individuals.* Consequently, the Court will grant summary judgment for defendants Herr and Shuman on Counts VII and VIII.

## V. *Conclusion*

Defendants' motion for summary judgment will be granted in part and denied in part. Summary judgment will be entered in favor of the defendant Vo-Tech District on Counts XI and XIII. The Districts' motion on Count I will be granted as to alleged negligent repair of the engine but denied as to damages against the District arising from Leonard's allegedly negligent certification of the repair of the engine. Plaintiff is not entitled to recover punitive damages from the District. As for the other defendants, summary judgment will be entered in favor of defendant Herr on Counts III, VII and IX and in favor of defendant Shuman on Counts IV, VIII and X.

An appropriate order will issue.