FRANCIS J. BOWRING *vs.* WILMINGTON MALLEABLE IRON COMPANY, a corporation existing under the laws of the State of Delaware.

*Personal Injuries—Pleading—Demurrer—Action by Father as next Friend of his Son—Action by Father in his own Right —Cause of Action the same—Emancipation of Son— —Relinquishment of Father's Right— —Estoppel—Waiver.*

1.    The fact that a father as next friend sought to recover for his minor child damages for which he might otherwise have maintained an action in his own name,will amount to a waiver or relinquishment of the father's right in favor of the son, or to an emancipation of the son by the father, so as to preclude the father from maintaining an action in his own name.

2.    But the next friend of an infant plaintiff is not a *party to the action* in such a sense that the judgment therein rendered could be pleaded in bar of any cause of action he might have against the same defendant growing out of the same transaction.   The actions would be different—the parties not the same.    A verdict against a person serving in one capacity will not estop him when he sues in another distinct capacity, and is in fact a different person in law.

(*May* 22, 1907.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Levin Irving Handy* and *Herbert L. Rice* for plaintiff.

*Thomas F. Bayard* and *J. Harvey Whiteman* for defendant.

Superior Court, New Castle County, May Term, 1907.

ACTION ON THE CASE (No. 25, February Term, 1905), to recover from the defendant damages for the loss of services of his minor son, and expenses incurred on account of personal injuries received by said minor in an accident which happened in the manufacturing plant of said company upon a planing machine, and alleged to have been caused by the defendant's negligence.
    Demurrer to plea.

PENNEWILL, J.:—In this action Francis J. Bowring, the plaintiff, is seeking to recover in his own right from the defendant company damages for the loss of services of his minor son, and expenses incurred on account of personal injuries received by said minor in an accident which happened in the manufacturing plant of said company, and alleged to have been caused by and through its negligence.

The plaintiff, in a former action brought by him as the next friend of his son, to the May Term of this Court, 1904, sought to recover from said company damages for injuries to the son growing out of the same accident; and in that case a verdict was rendered in favor of the defendant. In the declaration filed by the plaintiff in the former suit the injury to the son was set out in the following language:

"And by reason of said right hand of said plaintiff thus coming into contact with said revolving knives, said hand and the fingers and thumb thereof were cut, torn, broken, wounded, lacerated, amputated and injured, and also by means of the premises, said plaintiff became and was sick, suffering, sore, bruised, wounded, lamed and disordered, *and so continued for a long space of time, to wit, hitherto*, during all of which time the said plaintiff suffered and underwent great pain, and was hindered and prevented from transacting and attending to his necessary and lawful affairs and business by him *during all that time* to be performed and transacted, and lost and was deprived of divers great gains, profits and advantages which he might and otherwise would have derived from the same, and also the said plaintiff was forced and obliged to then and there have his fingers and thumb amputated by surgeons in the endeavor to be cured of the wounds, bruises and injuries so received, and in the said endeavor was forced and obliged to then and there lay out and expend divers large sums of money, to wit, three hundred dollars."

In the present case the plaintiff, suing in his individual capacity for damages sustained by him because of the injuries received by the son, uses the following language in describing his injuries:

"And by reason of said right hand of said Sam Bowring thus coming into contact with said revolving knives, said hand and the fingers and thumb thereof were cut, torn, broken, wounded, lacerated, amputated and injured, and also by means of the premises, said Sam Bowring became and was sick, suffering, sore, bruised, wounded, lamed and disordered, *and so continued for a long space of time, to wit, hitherto.* By means of which several premises, he, the said Sam Bowring, for a long space of .time, to. wit, from the day and year first above mentioned, hitherto, became and was unable to do or perform the necessary affairs and business of said plaintiff, so being his father and master as aforesaid, and thereby the said plaintiff during all that time lost and was deprived of the services of his said minor son and servant, to wit, at &c., New Castle County aforesaid, and also by means of said premises the said plaintiff was forced and obliged to and did necessarily pay, lay out and expend divers sums of money, in the whole amounting to a large sum of money, to wit, the sum of Three Hundred Dollars, in and about endeavoring the cure of said Sam Bowring, then and there being his minor son and servant as aforesaid of the wounds, bruises and injuries so received."

It will be observed that in the plaintiff's declaration in both cases the injuries complained of, and damages claimed, are set out in practically the same language, the action being for the son in the former case, and for the father in the latter case, and in each case for loss of services and expenses.

On February 5, 1907, the defendant filed in the cause now before the Court a plea, wherein it is alleged:

"The said plaintiff suffered judgment in a certain action in this Court, in which he, the said plaintiff as next friend of one Sam Bowring, the plaintiff's minor son, proceeded against this defendant on the same statement of facts and praying for judgment upon said statement of facts, and in the course of the trial thereof, introduced evidence in support of said same statement of facts, including evidence for loss of services of the said Sam Bowring during his period of minority, and for money paid, laid out and expended in the endeavor to be cured of the wounds, bruises

and injuries as alleged in the plaintiff's declaration in said suit."

To this plea the plaintiff demurred, and it is this demurrer, which having been argued is now before the Court for determination.

The demurrer of the plaintiff admits, of course, the truth of the facts alleged in the plea of the defendant, and the precise point raised, therefore, is whether the former action brought by the plaintiff is a bar to the present suit.   In other words, does the fact that the father sought to recover for his minor child damages for which he might otherwise have maintained an action in his own name, amount to a waiver or relinquishment of the father's right in favor of the son, as some of the authorities hold, or to an emancipation of the son by the father, as held by others, so as to preclude the father from maintaining an action in his own name?

In order that the particular question presented by this demurrer, and argued by counsel, may be clearly understood, and not confused with the question raised by another demurrer in this case argued at the November Term of this Court, 1906, and decided without an opinion, it may be well to state briefly the point involved in the former demurrer, and the reasons upon which the Court based their decision.   This is made the more necessary because counsel for the plaintiff contends that the plea now demurred to is the same as the one demurred to before, and that the Court, therefore, in sustaining the first demurrer, has decided the question now sought to be again raised by the defendant.

While the plea now before the Court differs from the former plea only in adding that the plaintiff in the action brought for the son "introduced evidence in support of the same statement of facts" etc., the question presented to the Court, and argued at length by counsel on both sides, was entirely different from the one argued upon the first demurrer.   In the first argument the contention of the defendant was simply this: that the plaintiff in the second case having previously brought suit as the next friend of his minor child, on account of the same injuries and involving the same negligence, and having prosecuted the case to judgment,

is estopped from maintaining another action in his own name upon the same statement of facts. In that argument the defendant sought to invoke the doctrine of *res adjudicata*, contending that the plaintiff was estopped from maintaining his action, and could not be permitted to recover damages for injuries, the defendant's liability for which had been adjudicated in the former case. That was the only point presented, and the specific question whether the plaintiff was barred of his action by seeking to recover for his son damages which he himself might have sued for was in no wise considered.

In sustaining the former demurrer this Court decided that the action brought by the father as next friend for his minor child was not a bar to a subsequent action by the father in his own right, and for the reason, that the next friend of an infant plaintiff is not a party to the action in such a sense that the judgment therein rendered could be pleaded in bar of any cause of action he might have against the same defendant growing out of the same transaction. The actions, it was held, were essentially different, and the parties thereto not the same. A verdict against a person suing in one capacity will not estop him when he sues in another distinct capacity, and in fact, is a different person in law. Estoppels arise between the same parties when litigating the same subject matter in a subsequent suit in the same right or capacity, and not otherwise. The case of *Bernard vs. Merrill, et al.*, 91 *Me.*, 358, seemed to the Court to be an authority not only directly in point but remarkably well considered. It was approved and followed by this Court.

Having now stated the question determined in our disposition of the former demurrer, we will consider the point presented and argued by counsel in the demurrer now before us.

Counsel for the defendant in their brief declare that the object of the plea last filed is to bar the plaintiff from recovering in this action, because his acts and conduct in the former suit constituted an emancipation of his son and a determination of the servitude that grows out of the relation of parent and child during the period of the child's minority. Did the act of the father

in seeking to recover for his son damages for the son's loss of time and impaired ability to labor, and expenses incurred, because of his injuries, constitute such an emancipation of the son, or relinquishment of the father's right in favor of the son, as would prevent the plaintiff from maintaining his present action?

It is unquestionably the law of this State that a father may not only voluntarily and expressly emancipate his minor son, but such emancipation may be implied by law from circumstances, or inferred from the conduct of the parent.

In *Farrel vs. Farrel*, 3 *Houst.* 633, the Court said:

"Or emancipation may be implied from the conduct and relations of the parties, that is to say, the emancipation or freedom of the son to labor for his own living may be inferred from the fact that his father has knowingly permitted him to enter into contracts and manage business for himself or on his own account for a considerable length of time. Or when a minor son makes a contract for his services on his own account and the father knows of it and makes no objection, there is, it seems, an implied assent on his part that the son shall have his own earnings. *Armstrong vs. McDonald*, 10 *Barbour* 300. If a father emancipates his minor child and such child by industry accumulates money, the money is his and not his father's. And if the father receives money from such minor child, not as due to or belonging to himself, but receives it and recognizes it as money belonging to his child, he cannot afterward legally claim or hold it as his own, on the ground of its being the fruits or profits of such child's labor; and more especially if it was understood between them that the father received it either to invest or hold it for his child's benefit.

"It has been contended by the counsel for the defendant that if any money was paid to him by his son, it was paid voluntarily and that as the money was the earning of a minor child, it cannot now be recovered back. In other words, that there is no legal obligation resting on the father to restore the money to his son. Now this depends upon the question as to whether the father by his conduct toward his son emancipated him from his

service. If he emancipated him, then the money earned by the son belonged to the son; and the latter has just as much right to maintain this action and to recover whatever amount is due to him as any other person would have to recover back money which he had deposited in the hands of another."

In the case of *Gooden by her next friend, L. L. Gooden, vs. Boyl, et al.*, 85 *Iowa* 592, the Supreme Court of that State said: "There is no liability of the defendant to the father, under the contract. If there ever was such liability there is none now, for the father by commencing this suit, as the next friend of his child, by that very act releases the defendant from any supposed liability there may be to him under the contract."

In *Abeles vs. Bransfield*, 19 *Kansas* 16, which was a suit brought by the mother as the next friend of her son, the Supreme Court said: "As she (the mother) commenced this action in her own name, as his next friend, and set forth in the petition said loss of time and said expenses as a part of her son's expenses, and asked judgment in favor of her son for such damages, it must now be conclusively presumed that she relinquished and gave to her son all claim she might have had for compensation for such loss of time and such expenses.

" By this act of commencing and prosecuting this action, Mrs. Bransfield gave to her son all her claim for compensation for his loss of time and expenses occasioned by said accident."

The case of *Baker vs. Flint, etc. R. R. Co.*, 91 *Mich.* 298, is strikingly similar to the one now before the Court. The only difference is that in the Michigan case a verdict was rendered in favor of the plaintiff. But that difference in no wise affects the principle now under consideration. It was a suit to recover damages sustained by the plaintiff, and arising out of the same accident that resulted in his son Oscar's injuries. The claim was for the loss of the son's services during minority and for money expended, etc. The question to be decided was: "Whether the plaintiff is estopped from recovery for loss of his son's services during minority by reason of a claimed recovery for the same

services in Oscar's suit, where the plaintiff appeared as his next friend."

The trial Court directed the jury that, "as none of the items involved in that suit could be legally proved or recovered for in the suit brought by Oscar, therefore the plaintiff would not be barred from recovering such damages in this action."

The case was taken to the Supreme Court on writ of error, and Long, Judge, in delivering the opinion, said: "We have looked into the former record,—the suit of Oscar against the defendant company—and find that the declaration in that case contains two counts.     *     *     *     *

"In the second count it is stated that he so remained for a long space of time, to wit, from thence hitherto, during all of which time he, the plaintiff, suffered great pain and was and is hindered and prevented from doing any work and from attending school, and is and always will be, hindered and disabled from earning his own living; wherefore the plaintiff says that he is injured and hath sustained damage, etc.

"Evidence was introduced by the plaintiff, under the declaration, to sustain his cause of action."

It was contended that though Oscar did recover for the value of such services in his suit, yet the plaintiff would not be barred from recovery or estopped from making claim therefor, for the reason that as matter of law Oscar had no right to recover for such damages in his suit.  Upon this point the Supreme Court said: "It appears that the plaintiff in this case, as next friend of his son Oscar, took part in the trial of the former case and insisted upon a recovery by his son for the very damages—that is, the value of the loss of Oscar's services—which he now seeks to recover in the present case.  It is undoubtedly true that as matter of law, Oscar had no right in his suit to recover such damages without the consent of his father, but he did recover with the consent of his father; therefore the father is now estopped from setting up claim for the same damages in this suit in his own name.  It is true that the earnings of a minor son belong to the father unless the father has given him his time and earnings; but the father cannot

recover for such earnings when he has emancipated him. If the case here had been for the earnings of the minor son and it appeared that in a former action by the son, the father acting as his next friend, he had recovered the value of his wages with the consent of his father, that fact would be held tantamount to manumission of the infant as far as that suit was concerned, and the father would be estopped from recovery of the same wages. There can be no distinction between such a case and the present, and the fact that the father appeared and prosecuted as next friend was tantamount to a relinquishment of such loss of services. The Court should have admitted the evidence and have directed the jury that no recovery could be had by the father for the loss of such services, as their value had already been recovered by the son with the father's conser t.

We will now notice some of the cases cited by counsel for the plaintiff, and only those upon which he seemed most confidently to rely. The others do not appear to be at all applicable to the present discussion, or at least they are clearly distinguishable from the present case.

The case of *Peppercorn vs. Black River Falls*, 89 *Wis.* 36, is one of those upon which much stress was laid, but upon examination we find that it does not appear that the father was in any way connected with the son's suit. Manifestly, therefore, the plaintiff could not recover for loss of time during his minority. It belonged to the father unless he had relinquished his right thereto, and he had not done so by seeking to recover the same for his son.

In the case of *Wilton vs. Middlesex R. R.*, 125 *Mass.* 130, there is nothing to show that in the previous suit brought by the father as next friend of his daughter, any claim was made for damages for loss of time or services, or in fact for any damages to which the father would have been legally entitled. The Court very properly said: "The previous suit is not a bar to the present. * * * The measure of damages in the former action was the injury to the child and not the injury to the father."

And in the later Massachusetts case of *Horgan vs. Pacific*, 125 *Mass.* 130, which counsel for the plaintiff says was subse-

quent to the Michigan case, we find that the previous action was brought by the daughter and settled for a certain sum, which was paid to the father as guardian of his daughter. In fact, it was agreed that in the suit by the daughter no claim was made for expenses or loss of services.

The case of *Texas and P. Ry. Co. vs. Morris*, 66 *Tex.* 133; 18 *S. W.*, 345, appears at first to be an authority in support of plaintiff's contention, and in direct conflict with the authorities cited by the defendant. Upon a careful examination, however, it is found not to be so. The Court in that case held that in an action by a minor against a railroad company for personal injuries no recovery can be had for plaintiff's diminished capacity to earn during his minority, as such earnings belong to plaintiff's father, unless there is proof of plaintiff's emancipation by his father; and it further held that the fact that the suit is brought by plaintiff's father as his next friend does not constitute a relinquishment by the father of any claim he might assert on account of plaintiff's diminished capacity to earn during his minority.

The trial Court had instructed the jury "that in estimating damages they might take into consideration any reduction of the power and capacity of the appellee to earn money."

The Supreme Court held such instruction error, it is true, but said, "there was nothing in the pleadings to indicate any intention on the part of the parent to relinquish all claim which he might make"; thereby clearly intimating that if the father had made the claim for the son, he could not have recovered for himself. The Court expressly distinguished the case from that of *Abeles vs. Bransfield*, cited by the defendant.

There remains to notice the case of *Lieberman vs. Third Avenue R. R. Co.* (Supreme Court N. Y. ),25*Misc. Reps.* 704 (55 N. Y. S. 577), and upon this the plaintiff lays particular stress as being diametrically opposed to the Michigan case, and decided seven years later.

In this case the appellate court said the minor could not recover for loss of wages unless he had been emancipated by the father, and that there was no evidence of such emancipation. It

was held that the mere allegation "that the deponent is unable to perform any work, and has been seriously injured and damaged, does not show an emancipation, but is, at most, a statement that the plaintiff's injuries are of such a character as to prevent the performance of any work."

We cannot tell just what the pleadings were in the suit by the son, and it is not clear, therefore, that the claim made by the father as guardian for the son embraced everything that the father might have sued for. But, however this may be, the position taken in the Michigan case seems to us to be more consistent with sound reason and authority. And we may say here, since counsel for the plaintiff contends otherwise, that we think the decision in the Michigan case is entirely consistent with the case of *Bernard vs. Merrill* already referred to, and upon the authority of which this Court based its decision in the first demurrer.

The question of the child's emancipation, or relinquishment of the father's right, was not involved in the case of *Bernard vs. Merrill*. The Court nowhere in the opinion alluded to that question, nor could it have been considered under the pleadings and facts involved therein. There is no conflict between the two decisions.

We think the Court in the Michigan case of *Baker vs. Flint* correctly stated the law applicable thereto, and can see no difference in principle between that case and the one at bar. In the one case the verdict was in favor of the plaintiff and in the other in favor of the defendant. But the difference is wholly without significance, as the acts of the parent in each case when suing as next friend of his minor child were the same, for both declared for damages, to which the parent was entitled, for a period of time beginning with the date of the accident, and introduced evidence covering that period. Where the verdict is in favor of the plaintiff it might possibly be argued that it was for the injury to the son only and that the loss of time and labor were not considered, but when in favor of the defendant it must be conceded that the jury considered every claim and allowed damages for none. The action of the father of Samuel Bowring in declaring as he did, as

next friend of his son, and following up his declaration with evidence, constituted an emancipation of his son, or at least a relinquishment of his own right, which operated as an estoppel against his recovery of damages for his son's services and expenses incurred by the father.

The demurrer is overruled.