735 A.2d 433 (1999)
In the Matter of S.L., (date of birth 5/82) a Minor Child
v.
A. and Sh. L.
No. CN89-11574.
Family Court of Delaware, New Castle County.
Submitted: February 5, 1999.
Decided: March 12, 1999.
Dana Harrington, (argued), Janine N. Howard, Delaware Volunteer Legal Services, Inc., for S.L.
Daniel J. Munley, Richards Layton & Finger, Guardian Ad Litem, for S.L.
Karen L. Valihura, (argued), Stephen D. Dargitz, and Marc Nemer, Skadden, Arps, Slate, Meagher & Flom LLP, for A. and Sh.L.
*435 KUHN, J.

INTRODUCTION
This matter is before the Court on a Petition for Emancipation filed on behalf of S.L. (hereinafter "Petitioner"), by and through her Guardian Ad Litem, Daniel J. Munley, Esquire.[1] Petitioner is seeking emancipation from her parents, Sh. and A.L. (hereinafter "Respondents") so that Petitioner may legally contract for housing "as well as other necessities for her health and well being."[2] The petition is a direct petition for emancipation, in which Petitioner is seeking a partial emancipation for the limited purpose of contracting for housing.[3] At the initial hearing on December 10, 1998, the Court heard testimony regarding the Petition and reviewed allegations of abuse and neglect set forth in the Petition.[4] The Court recessed the hearing due to the need to answer the preliminary issue before the Court: Does the Family Court of the State of Delaware, a Court of limited statutory jurisdiction, have subject matter jurisdiction to address a Petition for Emancipation.
Based upon the testimony presented at the December 10, 1998 hearing, the Court requested that counsel for Petitioner make a Hotline referral to the Division of Family Services (hereinafter "DFS") of the Department of Services for Children, Youth, and their Families (hereinafter "Department") for investigation of Petitioner's allegations of abuse and neglect.[5] Thereafter, counsel for Petitioner contacted DFS.
On January 28, 1999, Tania M. Culley, Deputy Attorney General for DFS, advised the Court by correspondence that DFS had investigated the referral and had "approved the non-relative caretaker with whom [Petitioner] is now living. The home is safe and appropriate. [Petitioner] has also been set up with Medicaid and *436 General Assistance."[6]
At the close of the December 10, 1998 hearing, the Court requested Petitioner's counsel to provide the Court with a legal memorandum addressing the issue of whether the Family Court of the State of Delaware has subject matter jurisdiction over a Petition for Emancipation. Petitioner's counsel filed a legal memorandum on December 18, 1998.
On December 23, 1998 the Court appointed Karen Valihura, Esquire, of Skadden, Arps, Slate, Meagher and Flom, LLP, as counsel for Respondents. On January 12, 1999, Respondents, by and through counsel, filed a Response to Petitioner's legal memorandum and a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Family Court Civil Procedure Rule 12(b)(6).[7] Oral argument on the Motion to Dismiss and the question of Family Court's jurisdiction was held on January 29, 1999. Counsel for Petitioner and Respondents filed supplemental briefings on February 5, 1999. This is the Court's decision on Respondent's Motion to Dismiss.

STANDARD ON A MOTION TO DISMISS
The issue underlying the Motion to Dismiss is whether Family Court has subject matter jurisdiction over this cause of action. The plaintiff bears the burden of establishing that this Court has subject matter jurisdiction. See Wilmington Fraternal Order of Police Lodge #1 v. Bostrom, Del. Ch., C.A. No. 16348, Jacobs, V.C., 1999 WL 39546 (Jan. 22, 1999).[8] The Court makes the determination of subject matter jurisdiction on the face of the complaint at the time of filing and assumes that all material factual allegations are true. See id.[9] The Court may, however, look beyond the face of the complaint and examine "the true nature of the relief sought." Wilmington Fraternal (citation omitted). This Court must view the pleadings in the light most favorable to the Petitioner. See, e.g., In re Santa Fe Pacific *437 Corp. Shareholder Litigation, Del.Supr., 669 A.2d 59, 62 (1995).

FACTS
Petitioner is a sixteen-year-old minor who seeks an Order of Emancipation from her parents. Petitioner claims that she has lived separate and apart from her parents since approximately May 1996.[10] Petitioner alleges that, while living with Respondents, she was physically and sexually abused. She contends that she had to be self sufficient and could not rely on Respondents for her needs. She presents herself as an "extremely mature sixteen year old" female who intends to obtain her GED in May 1999. Petitioner claims that she is self sufficient, paying for her own monthly rent and personal needs from her earnings; her earnings from her two jobs total approximately $1,000.00 per month. Petitioner states that, at present, she has little contact and no relationship with her parents.
Petitioner was injured in an automobile accident in February of 1997. One of the stated reasons for the filing of the Petition for Emancipation was that the statute of limitations period on her personal injury action would end in February 1999. Petitioner alleged that emancipation was necessary in order to preserve her legal claim. Petitioner has since withdrawn this claim as a basis for relief; she has been able to preserve her cause of action as a result of the appointment of a Guardian Ad Litem in the Superior Court action.[11] Petitioner claims she has incurred several thousand dollars in medical expenses and that she has had to discontinue medical treatment due to her inability to afford her medical bills. She further claims that Respondents have not assisted her in the payment of her medical bills.
Based upon these claims, Petitioner asks this Court to grant her a partial emancipation from her parents.

DISCUSSION
The issue presented by the Motion to Dismiss is whether Family Court has the authority and the jurisdiction to rule on a Petition for Emancipation. The legal definition of emancipation is "[t]he act by which one who was unfree, or under the power and control of another, is rendered free, or set at liberty and made his own master." Black's Law Dictionary 468 (5th ed.1979). An emancipated minor is defined as a "person under 18 years of age who is totally self-supporting." Black's Law Dictionary 468 (5th ed.1979).
In Delaware, unlike a growing number of other states,[12] the general legal definition *438 is the only definition available.[13] The Delaware Code does not provide a definition, nor a procedure, for emancipation. In determining whether Family Court has the authority to consider the emancipation petition of a minor, the first question is whether there is any statutory authority, given the lack of specific statutory provisions, under which the Court may review this cause of action.

STATUTORY AUTHORITY
Family Court is "created by and derives its authority solely from statute." Villarroel v. Villarroel, Del.Supr., 562 A.2d 1180, 1182 n. 4, (1989).[14] The Delaware courts, including our Delaware Supreme Court, have repeatedly held, in cases involving issues ranging from divorce to child support, that the jurisdiction of Family Court is limited to the authority granted by statute. See Villarroel, 562 A.2d at 1183. Therefore, in order for this Court to find jurisdiction over a Petition for Emancipation, the Delaware Code must provide the Court with a statutory basis for the proceeding.
The purpose of the Family Court of the State of Delaware is set forth by statute, 10 Del.C. § 902(a).[15] This section provides the general purpose and construction of the statutory scheme for the Family Court. It expressly states that the Family Court will have "original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein." 10 Del. C. § 902(a). Section 902(b) of Title 10 of the Delaware Code requires that the provisions of 10 Del.C. § 902(a) be liberally construed in order that the purposes of Chapter 9 may be realized.[16]
*439 Petitioner relies upon 10 Del. C. § 902 and 10 Del.C. § 921(3) to establish the statutory basis for this Court to find jurisdiction over the subject matter at issue, the Petition for Emancipation. Under 10 Del.C. § 921(3), the legislature has vested in the Family Court the exclusive jurisdiction to deal with any petitions or actions for, among other things, the control of children.[17] Petitioner argues that the Court must liberally construe section 921(3) in accordance with section 902(b) and conclude that the Family Court has exclusive jurisdiction to deal with the Petition for Emancipation of a minor, which deals with the ultimate control of the child.
Section 921(3) was enacted in 1971 when the civil jurisdiction of Family Court was expanded and redefined by the General Assembly. See Husband, P. v. Wife, P., Del.Supr., 348 A.2d 327, 329 (1975). The General Assembly's intention in 1971 was to provide litigants with one source of relief that is well versed and knowledgeable in the area of family matters and in the special issues relating to children. See Wife, P. v. Husband, P., Del. Ch., 287 A.2d 409, 413 (1972); see also Scribner v. Chonofsky, Del.Supr., 310 A.2d 924, 927 (1973).[18] While § 921(3) does vest jurisdiction over certain enumerated actions in Family Court, this statutory provision does not create or provide independent statutory rights to individuals.[19] The provision does confer exclusive jurisdiction upon this Court over rights and actions that are otherwise created by statute. See, e.g., Sanders v. Sanders, Del.Supr., 570 A.2d 1189 (1990); Wife, S. v. Husband, S., Del. Ch., 295 A.2d 768 (1972); Wife, P. v. Husband, P., Del. Ch., 287 A.2d 409, 413 (1972).
Finally, Petitioner contends that this Court has jurisdiction over emancipation as a form of relief in a Dependency/Neglect action through the Court's equitable powers under 10 Del. C. § 925(15).[20] Petitioner contends that, because the Court has ruled that it has jurisdiction to hear issues relating to dependency/neglect regarding Petitioner, the Court also has the power under the principles of equity to order emancipation as relief.

IS THE FAMILY COURT OF DELAWARE STATUTORILY AUTHORIZED TO ADDRESS EMANCIPATION?
This petition, and the issue of emancipation, presents the Court with a question of statutory interpretation: whether Family Court's existing statutory authority encompasses emancipation, without a direct reference to the same. The Superior Court of Delaware stated in Mount Pleasant School District v. Warder that "[i]t is clear from this enumeration of powers that the Family Court has been vested with extensive powers to deal with problems of minors. These powers include the broad powers inherent in a Court of equity to deal with those problems of minors." 375 *440 A.2d 478, 482 (1977).[21] Family Court, however, may only exercise this power to aid or to implement its existing statutory authority. Villarroel v. Villarroel, Del. Supr., 562 A.2d 1180, 1183 (1989) (citations omitted). The courts have repeatedly held that Family Court may exercise principles of equity only where jurisdiction has been specifically conferred by statute. Wife, S. v. Husband, S., 295 A.2d at 770.[22]
Family Court is therefore guided by the principles of broad exercise of its enumerated powers. It is also, however, guided by the requirement to limit its broad exercise to the powers enumerated by statute. For example, in Sanders v. Sanders, the Supreme Court of Delaware held that Family Court had no statutory jurisdiction, under the circumstances of that case, to rule on petitions to rescind contractual agreements when such petitions were not within divorce or annulment proceedings. 570 A.2d 1189, 1191. In addition, in Angelli v. Sherway, the Supreme Court of Delaware concluded that the Family Court has the equitable authority to allocate marital property incident to a divorce but, where the divorce proceeding itself abates, "the Family Court lacks a statutory predicate upon which to fashion further relief." Angelli v. Sherway, Del.Supr., 560 A.2d 1028, 1037 (1989).
Taken in conjunction with the decisions that limit Family Court's jurisdiction to that provided by statute, and the statutory authority, this Court concludes that Family Court is authorized to broadly exercise only those powers that are statutorily provided.
The Family Court does regularly and appropriately rely upon the broad exercise of its statutory authorization. Specifically, the Court routinely rules upon Petitions for Imperiling the Family Relationship and Petitions for Guardianship despite the lack of extensive statutory guidance. Imperiling the Family Relationship and Guardianship are, in fact, undefined except for their enumeration as causes of action in Chapter 10 of the Delaware Code.[23]
Petitioner relies upon the fact that section 921(3) grants exclusive jurisdiction to the Family Court to deal with actions concerning the "control" of children. By its definition, emancipation does concern the control of children, as well as their custody, education, family, and support. However, *441 even giving section 921(3) a liberal construction, it cannot be read to provide a cause of action for emancipation. To do so would necessitate a finding that any issue involving control of children would automatically fall within the jurisdiction of Family Court, a result that does not appear to have been contemplated by the legislature. It is also clear that emancipation, in any form, directly impacts the parent-child relationship.
Additionally, the Court does not find statutory authority by which Family Court can consider emancipation as a form of relief in a Dependency/Neglect action through the equitable powers conferred by 10 Del. C. § 925(15). To do so would extend the grant of equitable powers to Family Court further than contemplated by the statutory framework that currently exists.
Moreover, the Court cannot find any cause of action in Family Court that is not somewhere delineated or enumerated by statute as a specific cause of action. After careful examination of its statutory authority, this Court cannot find a statutory basis by which jurisdiction of an emancipation petition is conferred upon the Family Court.
Despite the lack of clear statutory authority, emancipation is frequently presented to and addressed by the courts of Delaware and, in particular, Family Court. Therefore, the Court must examine the line of judicial decisions addressing emancipation to see whether the cases provide authority or guidance to Family Court in addressing a petition for emancipation.

EMANCIPATION CASE LAW IN DELAWARE
The Delaware courts have confronted emancipation in many different ways and in many different contexts. The courts have most often addressed the issue of partial emancipation.[24] A partial emancipation "frees a child for only a part of the period of minority, or from only a part of the parent's rights, or for some purposes, and not for others." Black's Law Dictionary 468 (5th ed.1979).[25] While in some cases a minor has petitioned the courts for an emancipation, in the majority of reported cases, emancipation has been presented to the courts as a "subissue" within other proceedings, such as child support. See, e.g., Chance v. Chance, Del.Fam., File No. CN95-06143, Tumas, J., 1998 WL 665731 (April 1, 1998); DCSE/Ellen S.P. v. Terrance D.S., Del.Fam., No. CK95-3937, Nicholas, J., 1996 WL 798783 (Sept. 5, 1996); Kathleen L.H. v. Wayne E.H., Del. Fam., 523 A.2d 977 (1987).
There is legal precedent for the Delaware courts, including the Family Court, to consider emancipation both as a defense and as a unique cause of action. Emancipation has been recognized by Delaware Courts since the later 1800s. See Farrell v. Farrell, Del.Super., 3 Houst. 633 (1868); Wilkins v. Wilson, Del.Super., 41 A. 76 (1895); Bowring v. Wilmington Malleable Iron Co., Del.Super., 67 A. 160 (1907).
In actions for the recovery of monetary damages under contract or personal *442 injury actions, the Superior Court of Delaware has concluded that a parent may "voluntarily and expressly emancipate" their minor child. Bowring, 67 A. at 162; Wilkins, 41 A. at 77; Farrell, 3 Houst. at 640. An emancipation by a parent "may be implied by law from circumstances or inferred from the conduct of the parent." Bowring, 67 A. at 162 (relying on Farrell v. Farrell, 3 Houst. 633); see Farrell, 3 Houst. at 640. The Court recognized that emancipation did occur. See Bowring, 67 A. at 164; Farrell, 3 Houst. at 641.
Emancipation also arises in other contexts in Family Court, often in child support cases where Family Court must determine what, if any, support is due to a minor. See, e.g., DCSE/Ellen S.P. v. Terrance D.S., Del.Fam., No. CK95-3937, Nicholas, J., 1996 WL 798783 (Sept. 5, 1996); Kathleen L.H. v. Wayne E.H., Del. Fam., 523 A.2d 977 (1987).[26] While, in many of these cases, emancipation refers to an attainment of the age of majority,[27] in others the reference is to emancipation prior to reaching the age of majority.[28] In fact, the guidelines for child support in Delaware refer to "emancipated children."[29]
In Kathleen L.H., the Family Court echoed the conclusions of the Superior Court in finding that emancipation could be express but also may be "implied from the conduct of the parties and surrounding circumstances, especially from the conduct of the parties inconsistent with the continuation of parental and filial legal rights and obligations. A minor may be emancipated for some purposes, but not for others, and the parent may be freed from some of his obligations, yet not be divested of others." Kathleen L.H., 523 A.2d at 978-79 (citations omitted).[30] In *443 Kathleen L.H., Family Court did not specifically reach a conclusion as to whether it had jurisdiction to declare the minor to be emancipated. 523 A.2d at 979.[31]
The issue of whether Family Court had jurisdiction to declare the minor to be emancipated was, likewise, not addressed by the Court in DCSE/Ellen S.P. v. Terrance D.S.[32] The Court concluded that emancipation of a child would be just cause for concluding that there was no longer a duty of support but concluded that "the evidence failed to establish that the child was emancipated." DCSE/Ellen S.P.[33]
In addition to cases in Family Court where emancipation arises as a subissue, direct petitions by a minor for emancipation have been presented to Family Court and emancipations in fact have been granted by Family Court. See Brenda E. v. Margaret C., Del.Fam., File No. CN87-0364/F-2607, Keil, J. (August 24, 1987); State ex rel. Cindy L.S., Del.Fam., File No. # E-5498, Wakefield, J. (July 19, 1977). The Court in Brenda E., in granting emancipation, noted that there was a presumption against emancipation but that the petitioner had met her burden of proof.[34]
In State ex rel Cindy L.S., Family Court granted the emancipation, while acknowledging the lack of statutory guidance. The Court stated that "there is no specific provision in the Delaware Code conferring upon this Court the authority to emancipate a minor." Cindy L.S. The Court also set forth the limits of its grant of emancipation, stating that it did not have the authority "to relieve a parent of all *444 legal obligations of every kind" and did not have the authority to "emancipate permanently." Id. The Court found that it had "authority to grant partial emancipation only and that such partial emancipation is subject to revocation." Id. Thus, the mother of the child was relieved of obligations to control, supervise, and support the child, "subject to revocation upon a proper showing." Id.
In both Brenda E. and Cindy L.S., the Court grappled with facts, not unlike those in the instant case, where minors experienced irreconcilable differences with their parents and were no longer living in the family home. See Brenda E.; Cindy L.S. The Court acknowledged that it was "not in a position to turn the clock backward but must accept the reality of what exists today." Brenda E. These cases highlight the very real and difficult challenges presented by adolescents whose needs are not sufficiently addressed by existing legal options; these are issues that continue to exist and are again at issue for the Court. These cases also highlight the multiple factors that the Court must consider with regard to an emancipation petition, inter alia: whether presumptions exist in favor of either party; the interrelationship with other statutory requirements; the interests of the minor; the effect on the parent-child relationship; the permanency of an emancipation; and the extent of the emancipation.[35] As noted by the Court in Cindy L.S., it could not assure the mother that she was "relieved of all responsibilities of every kind." Cindy L.S. Then, as is still true today, the specific rights and obligations of parents of emancipated children remained undefined.
Emancipation has a long history in Delaware. It arises in a variety of different contexts and various courts have considered numerous factors in making determinations concerning emancipation.[36] This Court believes that the issues considered in prior decisions with regard to emancipation were appropriately considered and form a solid basis for further development of the law concerning emancipation. Because the Petition for Emancipation in this case does not arise as a defense or in the context of a child support petition, this Court does not reach the issue as to whether Family Court has the ability to make an actual finding that a child is "emancipated" for purposes of cases that are primarily cases of dependency/neglect, child support, custody, or termination of parental rights. It is clear, however, that issues concerning emancipation have, and will, continue to arise in such matters.
Having examined the history of emancipation within Delaware's courts, this Court is unable to find authority granting Family Court jurisdiction over a cause of action that is not enumerated within the Delaware Code. The relevant statutes do not provide any additional grant of jurisdiction that would permit a direct petition for emancipation to be addressed by Family Court. Without any statutory reference to emancipation, the Court also cannot conclude that a direct petition for emancipation by a minor can be considered as an available remedy within the dependency/neglect context.
Although the common law history, the mandate to have one court address issues related to families and children, and *445 public policy all seem to favor allowing the issue of emancipation to be addressed by the same court that is mandated to address the control, education, and support of children, the lack of legislation at this time does not allow the Family Court to address a direct petition for emancipation by a minor. Regardless of the temptation to act, finding jurisdiction over this petition would be inappropriate.

THE CUSTODIAL STATUS OF PETITIONER
In the absence of legislation, this Court has concluded that jurisdiction does not lie within Family Court on a direct petition for emancipation by a minor. The impact of this decision leaves this Court, the child welfare agencies, and adolescents themselves in a difficult position. It is an unfortunate reality that there are adolescents who have homes to which they cannot return and parents who do not or cannot provide for them in any meaningful way. These adolescents, therefore, become entangled in a void in a system that is not adequately equipped to serve them.[37] In some cases, a Petition for Termination of Parental Rights may be filed by the Department, or by an agency, even when a child is sixteen or seventeen years of age.[38] The prospects for adoption of a teenager, however, are remote. The adolescent can remain in foster care, under the legal protection of the Division, until they have attained majority. Other teenagers may enter marriage as a way to attempt to gain independence.
The Court in this case is confronted with an adolescent who, based upon the facts alleged by the Petitioner, falls into neither group.[39] There are no pending custody, child support, or TPR petitions.[40] She is not emancipated. She is still, at sixteen years of age, legally a child who must be in the custody and care of someone. The Court, under its statutory mandate, must consider Petitioner's custodial status and welfare. In its consideration of Petitioner's legal status and welfare, the Court has evaluated the evidence presented, both in the limited testimony on December 10, 1998 and in the parties' submissions.
Petitioner is not currently residing with her parents or receiving support from them. There have been serious allegations concerning the level of care and safety in their home and the DFS file concerning this family is voluminous.[41] Until additional information is obtained, it would be unconscionable for the Court to conclude that Petitioner should return to her parents' home. Petitioner is living with a nonrelative caretaker whom DFS has indicated that they have approved.[42] Petitioner's custodial status, therefore, remains in limbo.
While Petitioner's parents apparently have retained legal custody, she has no *446 ongoing relationship with them. Her caretaker has no legal custodial rights. The guardian ad litem for the civil suit is not a custodial caretaker. Petitioner cannot take the legal steps necessary to protect herself or to care for herself. There has to be someone with responsibility for Petitioner. This Court cannot ignore this responsibility.
The Court is aware, and appreciative, of the DFS investigation that concluded that Petitioner is currently in a safe environment. The Court is also very aware that DFS has an overwhelming demand placed upon it and far, far too many cases in which children are at risk and in need of foster placement and other agency services. The Court further acknowledges and appreciates that Petitioner has indicated that she is willing to accept responsibility for herself and appears to be appropriately attempting to do so. While the Court agrees that alternatives other than custodial arrangements with relative or nonrelative adults or with DFS may, in fact, be appropriate for Petitioner, these options are not available to this Court.
At this time, Petitioner cannot act for herself and there seems to be no responsible party in place with the custodial authority to act in her best interests. Petitioner, therefore, remains at risk. By means of a separate Order, this Court will, regardless of further arguments on the jurisdictional question of emancipation, order a hearing at which Petitioner; her counsel; her parents; her current caretaker; and DFS shall appear in order to make appropriate arrangements for the safety and welfare of this adolescent.

FAMILY COURT'S UNIQUE ROLE IN CAUSES OF ACTION AFFECTING CHILDREN, ADOLESCENTS, AND THEIR FAMILIES
Family Court continues, under its statutory mandate, to play a unique role in actions that directly affect children, adolescents, and their families. By reaching the conclusion that Family Court does not have jurisdiction over a direct petition by a minor for emancipation, the Court is in no way expressing a belief that such a cause of action should not be recognized and, if recognized, should not lie in Family Court. Family Court is uniquely suited to address the issues surrounding emancipation, issues that directly affect adolescents, their parents, and the family unit. This Court agrees with Judge Keil in believing that both the General Assembly and the courts must "deal with realities existing today." Brenda E. v. Margaret C. Del.Fam., File NO. CN87-0364/F-2607, Keil, J. (Aug. 24, 1987).
This Court, on a daily basis, confronts realities, including those presented by this case, that suggest that at times adolescents will live separate and apart from their families, either as a result of the parents' conduct or that of the adolescent. For these adolescents, who may be sufficiently mature to support themselves, alternative custodial arrangements with agencies, dependency/neglect proceedings, or termination of parental rights are not necessarily appropriate. These adolescents, at present, fall into a gap where their needs are not well represented.
A Petition for Emancipation raises complex substantive and procedural issues that are appropriate for consideration by the General Assembly. The first steps toward legislative consideration of emancipation have in fact occurred in Delaware. In the fall of 1998, the Delaware Legislative Council's office drafted proposed emancipation legislation. The Court is unaware whether the proposed legislation was submitted to the General Assembly. This legislation, however, does present many of the procedural issues that the Court would need to appropriately address such a petition. Without such a framework, many outstanding issues would remain unclear: the elements a petitioner must satisfy to be emancipated; the standard to be applied; the burden of proof; any applicable presumptions; the limits of an emancipation; the nature of the parental responsibility, *447 if any, after an emancipation; and whether an emancipation is revocable.[43] Such issues are beyond the authority of this Court to resolve. The Court does take this opportunity to bring the issue of emancipation to attention and to suggest that legislation, such as the proposed legislation, be considered.

CONCLUSION
Emancipation is not an enumerated cause of action within the Delaware Code. The Family Court of the State of Delaware, which must broadly exercise the authority granted to it by Delaware statutes, does not have jurisdiction to address a direct petition by a minor for a partial emancipation. Therefore, the Petition for Emancipation is dismissed for lack of jurisdiction over the subject matter.
IT IS SO ORDERED.
NOTES
[1] Petitioner, a minor, lacks capacity to institute a civil proceeding in her own name. The standing defect was cured by the appointment of the Guardian Ad Litem, Mr. Munley. See In re Samantha Nicole Frazer, Del.Supr., 721 A.2d 920, 921-22 (1998).
[2] Petitioner's original request for relief was more broad. In her initial filing with the Court, Petitioner requested a grant of emancipation "so that she may legally contract for an apartment and file a complaint, as well as necessities for health and well being." Petitioner's counsel clarified the type of emancipation sought at the hearing on January 29, 1999.
[3] The distinctions between partial emancipation and complete or total emancipation are discussed more fully herein.
[4] Petitioner alleges, inter alia, that she has been physically abused by her father, that she has been sexually assaulted by her brother, and that the Respondents have failed to support her financially for at least two years.
[5] Section 901 of Title 10 of the Delaware Code defines a dependent child as:

a child whose physical, mental or emotional health and well-being is threatened or impaired because of inadequate care and protection by the child's custodian, who is unable to provide adequate care for the child, whether or not caused by the child's behavior; provided, however, that for the purposes of this chapter, dependent child may include a child who has been placed in a nonrelated home on a permanent basis without the consent and approval of the Division of Child Protective Services or any agency licensed thereby to place children in a nonrelated home; or who has been placed with a licensed agency which certifies it cannot complete a suitable adoption plan.
10 Del. C. § 901(8).
A neglected child is defined as:
a child whose physical, mental or emotional health and well-being is threatened or impaired because of inadequate care and protection by the child's custodian, who has the ability and financial means to provide for the care but does not or will not provide adequate care; or a child who has been abused or neglected as defined by § 902 of Title 16. No child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall for that reason alone be considered a neglected child for purposes of this chapter.
10 Del. C. § 901(11).
[6] The correspondence from Counsel further advised that DFS policy dictates that "where the child's family, the child and the non-relative caretaker agree with the current arrangement and do not wish further DFS intervention, and where DFS determines the home to be safe and appropriate for the child, DFS will close their case. DFS has represented that all parties are in agreement with this current arrangement. Therefore, DFS will not be petitioning for custody of [Petitioner] and will be closing the case."
[7] Although filed as a Motion to Dismiss under Family Court Civil Procedure Rule 12(b)(6), the Court finds the more appropriate rule to be Family Court Civil Procedure Rule 12(b)(1), lack of subject matter jurisdiction. Moreover, the Court shall also review the Motion pursuant to Family Court Civil Procedure Rule 12(3). Family Court Civil Procedure Rule 12(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."
[8] Wilmington Fraternal is available as a slip copy on an electronic database service: 1999 WL 39546.

Although the standards for review of subject matter jurisdiction were set forth by the Court of Chancery, both the Court of Chancery and Family Court have identical versions of Rule 12(b)(1) and 12(3).
[9] See also, e.g., Union Texas Petroleum Holdings, Inc. v. Travelers Indemnity Company, Del. Ch., C.A. No. 15448, Chandler, C., 1998 WL 83068 (Feb.1998) ("For the purposes of a motion to dismiss, all well-pleaded allegations of the Complaint are accepted as true"). The standard is essentially the same when the assertion is failure to state a claim: "It is well settled under Delaware law that a complaint will not be dismissed for failure to state a claim unless it appears reasonably certain `that a plaintiff would not be entitled to the relief sought under any set of facts which could be proven to support the action.' In considering the sufficiency of the complaint, all well-pleaded allegations are accepted as true, and all reasonable inferences are construed in favor of the plaintiff." Union Texas (citations omitted). Union Texas is available in an electronic database: 1998 WL 83068.
[10] The facts in this section are derived from the Petition and, as noted supra, are viewed for purposes of the Motion to Dismiss in the light most favorable to Petitioner.
[11] On January 20, 1999 the Honorable William T. Quillen signed an order appointing Daniel J. Munley, Esquire, the Guardian Ad Litem of Petitioner S.L. for the sole purpose of her personal injury claims in Superior Court. S.L. v. Sh.L. and A.L., Del.Super., C.A. No. 99M-01-059, Quillen, J. (Jan. 18, 1999). The parties to this case stipulated that such appointment was not to be construed as an admission or introduced into evidence in the underlying proceeding.
[12] Approximately twenty-three states have emancipation statutes. See, e.g., Gregory A. Loken, "Thrownaway" Children and Thrownaway Parenthood, 68 Temple L.Rev. 1715, 1728 & n. 73 (1995) (citations omitted) (noting that two states (South Dakota and Washington) added emancipation statutes in the 1990s, joining 21 others (the 20 listed infra in this footnote plus Alabama, Mississippi, New Hampshire (recognizing out-of-state emancipation decrees), and Wyoming) that already had some type of statute concerning emancipation); Bruce C. Hafen & Jonathan O. Hafen, Abandoning Children to Their Autonomy: The United Nations Convention on the Rights of the Child, 37 Harv. Int'l L.J. 449, 479-80 & n. 164 (1996) (noting the "proliferation of emancipation statutes in the United States over the last thirty years" (p. 479) and noting that approximately 20 states have emancipation statutes (citing Dana F. Castle, Early Emancipation Statutes: Should They Protect Parents as Well as Children?, 20 Fam. L.Q. 343, 358 (1986))); Carol Sanger & Eleanor Willemsen, Minor Changes: Emancipating Children in Modern Times, 25 U. Mich. J.L. Reform 239, 245 & n. 25 (1992) (noting that 16 states (Alaska, Connecticut, Indiana, Kansas, Louisiana, Maine, Michigan, Montana, Nevada, New Mexico, North Carolina, Oklahoma, Oregon, Texas, Virginia, and West Virginia) (citations omitted) have an emancipation statute similar to California's and three others have statutes codifying common-law judicial emancipations (Arkansas, Illinois, and Tennessee) (citations omitted)).
[13] In the United States, emancipation as a doctrine has been recognized since the turn of the century. Emancipation law has developed along two lines: statutory emancipation and judicial emancipation. See William E. Dean, Casenote and Comment. Ireland v. Ireland: Judicial Emancipation of Minors in Idaho: Protecting the Best Interests of the Child or Conferring a Windfall Upon the Parent?, 31 Idaho L.Rev. 205, 215 (1994) (citations omitted). Judicial emancipation is generally seen as a theory available only to a parent while statutory emancipation is often viewed as being available only to a minor. See id. (citations omitted).
[14] In Villarroel, the Delaware Supreme concluded that "Family Court is a statutory court of limited jurisdiction." Villarroel, 562 A.2d at 1182 (citing M.T.L. v. T.P.L., Del.Supr., 414 A.2d 510, 511 (1980)). In M.T.L., the Supreme Court noted the limitations of Family Court's jurisdiction with regard to divorce and annulment actions, noting that such jurisdiction "depends solely upon the statute conferring such jurisdiction." M.T.L., 414 A.2d at 511 (citation omitted). Likewise, the Supreme Court of Delaware has explicitly and repeatedly stated that the "jurisdiction of the Family Court is defined by statute." Sanders v. Sanders, Del.Supr., 570 A.2d 1189, 1191 (1990).
[15] Section 902(a) of Title 10 of the Delaware Code, entitled "Purpose; construction," provides as follows:

In the firm belief that compliance with the law by the individual and preservation of the family as a unit are fundamental to the maintenance of a stable, democratic society, the General Assembly intends by enactment of this chapter that 1 court shall have original statewide civil and criminal jurisdiction over family and child matters and offenses as set forth herein. The court shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.
[16] Section 902(b) of Chapter 10 provides as follows: "This chapter shall be liberally construed that these purposes may be realized." See also Wife, S. v. Husband, S., Del. Ch., 295 A.2d 768, 771 (1972) (noting liberal construction of Family Court Act).
[17] Section 921(3) of 10 Delaware Code, entitled "Exclusive original civil jurisdiction," provides as follows:

The Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning:
(3) Enforcement of any law of this State or any subdivision or any regulation promulgated by a governmental agency, or any petitions or actions, for the education, protection, control, visitation, possession, custody, care, or support of children.
[18] In Scribner, the Court noted the "clear intention expressed by the General Assembly by 10 Del. C. § 902 to place all original civil jurisdiction `over family and child matters' in the Family Court." 310 A.2d at 927.
[19] Section 921(3) provides jurisdiction over causes of action that are more fully defined elsewhere, including, inter alia, custody and visitation (Chapter 7, Title 13) and support (Chapter 5, Title 13).
[20] Under 10 Del. C. § 925(15), Family Court, and each Judge, has the authority in "any civil action where jurisdiction is otherwise conferred upon the Family Court ... to enter such orders against any party to the action as the principles of equity appear to require."
[21] Mount Pleasant involved issues related directly to the education of minors, a cause of action that is enumerated within the Delaware Code. See 375 A.2d 478 (1977).
[22] "Family Court's jurisdiction to apply the principles of equity is specifically limited by the statute to any civil action `where jurisdiction is otherwise conferred upon it.' And that jurisdiction is, of course, found only in specific statutes dealing with family and related domestic relations matters." 295 A.2d at 770.
[23] With regard to Imperiling the Family Relationship, 10 Del. C. § 921(6) provides as follows:

The Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning:
(6) Actions and proceedings wherein:
a. A member of a family alleges that some other member of the family is by their conduct imperiling any family relationship and petitions the Court for appropriate relief.
b. The Division of Child Protective Services or a licensed youth service agency alleges that the conduct of a child, or of the parents or custodians, or members of a family, imperials [sic] any family relationship or imperils the morals, health, maintenance or care of a child and petitions the Court for appropriate relief; provided, however, that where a parent, to ensure the safety or welfare of his child, fails to cause the child to attend school, such parent has not imperiled the family relationship, nor has imperiled the morals, health, maintenance or care of the child.
c. In such actions and proceedings the Court may make such adjudications and dispositions as appear appropriate.
10 Del. C. § 921(6).
With regard to Guardianship, 10 Del. C. § 925(16) provides that "The Court and each Judge shall have authority to:
(16) To appoint guardians of the person over minors under 18 years of age."
[24] See, e.g., Kathleen L.H. v. Wayne E.H., Del. Fam., 523 A.2d 977 (1987); State ex rel Cindy L.S. v. Patricia T., Del.Fam., File No. B-5498, Wakefield, J. (July 19, 1977).
[25] A total or complete emancipation is "entire surrender of care, custody, and earnings of child, as well as renunciation of parental duties." Black's Law Dictionary 468 (5th ed.1979). The issue of total emancipation has been less often addressed by the courts. For a more complete discussion of emancipation, see as examples Gregory A. Loken, "Thrownaway" Children and Thrownaway Parenthood, 68 Temple L.Rev. 1715 (1995); Bruce C. Hafen & Jonathan O. Hafen, Abandoning Children to Their Autonomy: The United Nations Convention on the Rights of the Child, 37 Harv. Int'l L.J. 449 (1996); Carol Sanger & Eleanor Willemsen, Minor Changes: Emancipating Children in Modern Times, 25 U. Mich. J.L. Reform 239 (1992); Sanford N. Katz, William A. Schroeder, & Lawrence R. Sidman, Emancipating Our Children ___ Coming of Legal Age in America, 7 Fam. L.Q. 211 (1973).
[26] Issues related to emancipation in the child support context have also arisen in the Court of Chancery. Jurisdiction over child support actions, however, lies exclusively with Family Court. See, e.g., Connecticut General Life Insurance v. Wannberg, Del.Super., No. 95C-11-184-WTQ, 1996 WL 944911 (August 1996) ("Family Court has exclusive jurisdiction over any disputes involving support as to children or spousal agreements"); Wife, P. v. Husband, P, Del. Ch., 287 A.2d 409, 413 (1972) (stating that there was an adequate remedy at law in Family Court "sufficient to divest the Court of Chancery of jurisdiction in child support cases").
[27] See, e.g., Cooper v. Cooper, Del.Supr., 505 A.2d 1309 (Table), 1986 WL 16467, at *1 (February 1986) (Wife appealed Family Court order on grounds including the fact that original order did not provide for reduction in alimony "due upon emancipation of the child"); Chance v. Chance, Del.Fam., File No. CN95-06143, Tumas, J., 1998 WL 665731 (April 1, 1998) ("should Wife's alimony end prior to the parties' son's emancipation").
[28] See, e.g., Chilton v. Cobb, Del.Fam., File No. E-1933, Horgan, J. (Jan. 26, 1983) (applying standards from Bates v. Bates, 62 Misc.2d 498, 310 N.Y.S.2d 26 (1970), and concluding that "minor child was not emancipated for support purposes even though the child was employed because he still lived at home with his mother and, significantly, she maintained that he was not emancipated." (Cited in Kathleen L.H. v. Wayne E.H., Del. Fam., 523 A.2d 977, 979 Keil, J. (1987))).

High school graduation seems to be also frequently referenced in ancillary and support opinions as a point of emancipation. See, e.g., Webb-Hessel v. Webb, Del.Fam., No CN96-9727, Buckworth, J., 1998 WL 665527 (June 1998) (child, born 10/8/79, "expected to be emancipated in June of 1998" and issues included whether child's emancipation affected Husband's support or alimony obligations. As is discussed more fully infra, high school graduation has been one, but not the sole, criteria considered in determining emancipation).
[29] The Family Court of the State of Delaware: Delaware Child Support Formula Evaluation and Update (October 1, 1998) (Report of the Family Court Judiciary; The Honorable Vincent J. Poppiti, Chief Judge). Section D, on page 8, is entitled "Emancipated Children."
[30] In Kathleen L.H., a support arrears case, the issue presented to the Court was whether Father had shown just cause for suspending his support payments. 523 A.2d at 978. The Court proceeded, however, to conduct a detailed analysis of the law concerning the emancipation of minors, both in Delaware and elsewhere. See Kathleen L.H., 523 A.2d at 978-980. The Court noted that there was precedent for concluding that a minor's financial independence will in and of itself "support a finding of emancipation, but the better and more equitable rule requires more." Id. at 979.
[31] "In the instant case, if indeed this Court had jurisdiction to declare [her] to be an emancipated minor, it would not so rule based on the evidence produced." Kathleen L.H., 523 A.2d at 979 (emphasis added). The Court concluded that Father had not shown just cause for reducing his support payments. Id. at 979. The Court did note that the language of section 506 of Title 13, concerning child support, was "conceivably ... broad enough to permit termination of a support obligation in circumstances where a child becomes emancipated." Id. at 978.

In Kathleen L.H., the Court referred to a previous Family Court case, discussed more fully herein, whereby Family Court drew a conclusion about its authority to emancipate a minor and to relieve a parent of a support obligation. Kathleen L.H., 523 A.2d at 978 (citing State ex rel. C.L.S. v. P.T., Del.Fam., File No. B-5498, Wakefield, J. (July 19, 1977)). The Court in Kathleen specifically declined to address whether the minor was emancipated: "the precise issue in the instant case is not whether [she] became emancipated upon her graduation and employment but whether Father had shown just cause for suspending his support payments." Kathleen L.H., 523 A.2d at 978.
[32] DCSE/Ellen S.P. v. Terrance D.S., Del. Fam., No. CK95-3937, Nicholas, J., 1996 WL 798783 (Sept. 5, 1996). In this case, the respondent argued that the minor child, who was 17 years, 4 months of age at the time of the hearing, had by his own actions become emancipated and, therefore, respondent did not have a duty to support him. DCSE/Ellen S.P. v. Terrance D.S., is available on an electronic database: 1996 WL 798783.
[33] The Court concluded that the minor was not capable of supporting himself and that respondent still had a duty to support the child. DCSE/Ellen S.P. The Court stated that there was not enough evidence "to establish that the child was self-supporting and, therefore, emancipated." Id.
[34] The minor in Brenda E. had married out of state and was pregnant. Brenda E. The Court in Brenda E. considered the following factors in making its ruling: the age of majority in Delaware; 13 Del. C. § 123 (noting that age is not a "disability" to obtaining a marriage certificate if the party is a prospective parent); 10 Del. C. § 921(5)(allowing the Court to terminate compulsory school attendance); the case of Kathleen L.H. v. Wayne E.H. (noting that, in Kathleen, the Court found that emancipation could be implied from the conduct of the parties or the surrounding circumstances); the emotional and physical health of the minor and her unborn children; 13 Del. C. § 708 (allowing a child to consent to certain diagnostic or therapeutic procedures under certain circumstances); and 12 Del. C. § 3902 (allowing a minor to choose a guardian under certain circumstances). Brenda E. Brenda E. is available on an electronic database: 1996 Del.Fam. Ct. Lexis 75.
[35] Other courts, as well as commentators, have also confronted the numerous issues in need of consideration. See also William E. Dean, Casenote and Comment. Ireland v. Ireland: Judicial Emancipation of Minors in Idaho: Protecting the Best Interests of the Child or Conferring a Windfall Upon the Parent?, 31 Idaho L.Rev. 205, 216-17 (1994) (citations omitted) ("A finding that a minor is judicially emancipated has the effect of altering the minor's legal status and the parent-child relationship and its attendant rights and duties. This change in status may also, but will not usually, affect the minor's legal rights and duties as to third parties").
[36] See, e.g., DCSE/Ellen v. Terrance D.S., Del. Fam., File No. CK95-3937, Nicholas, J., 1996 WL 798783 (September 5, 1996) (examining whether minor capable of supporting himself).
[37] This opinion is not discussing juveniles who have delinquency charges pending or who have, by their own behavior, prevented a return to their homes.
[38] Under 13 Del. C. § 1104, a minor cannot file a Petition for Termination of Parental Rights.
[39] The Court, having found that it has no jurisdiction, in no way draws any conclusions concerning the merits of the Petition. The Court must, however, examine the impact of its decision on Petitioner and her situation in order to ensure her safe and appropriate care. The Court must, therefore, evaluate the limited evidence presented with regard to Petitioner's situation and assume, solely for purposes of determining the appropriate judicial action, that the evidence presented by Petitioner concerning her situation is accurate.
[40] Petitioner is neither married nor pregnant and is not enrolled in the armed services. She has obtained employment.
[41] The DFS file concerning this family is comprised of at least 500 pages, compiled by DFS over the ten-year period of their involvement with this family.
[42] It is not known whether this is actually an approved foster home. There is also no evidence that this caretaker is Plaintiff's legal guardian. At this time, neither Petitioner, Respondent, nor DFS has volunteered the identity or the address of the caretaker.
[43] These are merely illustrative examples that arose during this Court's consideration of the issue and by no means represent an exhaustive list. Delaware is not alone in facing the issue of direct emancipation. A number of other states have also confronted the issue of emancipation. See supra notes 12, 13, and 25.